**LOWENSTEIN SANDLER LLP**
Sharon L. Levine, Esq.
Wojciech F. Jung, Esq.
Jillian L. Zadie, Esq.
1251 Avenue of the Americas, 17th Floor
New York, New York 10020
(212) 262-6700 (Telephone)
(212) 262-7402 (Facsimile)

-and-

65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

*Proposed Counsel to the Debtors and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| ConnectEdu, Inc., *et al.*, [1] | Case No. 14-11238 (SCC) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS**
**(I) AUTHORIZING THE USE OF CASH COLLATERAL, (II) GRANTING**
**ADEQUATE PROTECTION, (III) MODIFYING THE AUTOMATIC**
**STAY, AND (IV) SCHEDULING A FINAL HEARING**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by

and through their proposed counsel, submit this motion (the "Motion") for entry of an interim

order substantially in the form submitted herewith (the "Interim Order") and a final order (the

"Final Order") (a) authorizing the Debtors to use cash collateral ("Cash Collateral"), (b)

authorizing the Debtors to provide adequate protection to the Prepetition Secured Parties (as

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: (1) ConnectEdu, Inc. (8132) ("ConnectEdu") and its direct subsidiaries: (2) Experience, Inc. (0757) ("Experience"); and (3) Academic Management Systems, Inc. (0844) ("AMS"). The location of the Debtors' corporate headquarters is 600 Atlantic Avenue, 20th Floor, Boston, MA 02210.

defined below) for the use of Cash Collateral, (c) modifying the automatic stay, and (d) scheduling a final hearing (the "Final Hearing") for the entry of a Final Order providing for the relief requested herein on a final basis.  In support of this Motion, the Debtors submit the Declaration in Support of Chapter 11 Petitions and First Day Pleadings (the "First Day Declaration").  In further support of the Motion, the Debtors respectfully state as follows:

## JURISDICTION, VENUE AND STATUTORY PREDICATE

1.    This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).  Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.    The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, 503(b) and 507 of title 11 of the United States Code (as amended, the "Bankruptcy Code"), Rules 2002, 4001, 6003 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 4001-2 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

## BACKGROUND

3.    On April 28, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").

4.    The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  As of the filing of this Motion, no trustee, examiner or committee has been requested or appointed.

5.    Additional background facts surrounding the commencement of these Chapter 11 Cases are more fully described in the First Day Declaration, filed concurrently herewith.

## PREPETITION SECURED INDEBTEDNESS

6.      As of the Petition Date, certain of the Debtors have outstanding secured debt totaling approximately $10.7 million (the "Prepetition Obligations").[2]   The Prepetition Obligations are comprised of approximately (i) $6 million of outstanding secured indebtedness owing to North Atlantic (as defined below) pursuant to the NAV Purchase Agreement (as defined below) and (ii) $4.7 million owing to the Experience Former Stockholders' Representative (as defined below, together with North Atlantic, the "Prepetition Secured Parties"), for her own benefit and the benefit of the other Former Experience Stockholders (as defined below) pursuant to, *inter alia*, the Experience Debt (as defined below) and the Experience 2013 Letter Agreement (as defined below).

### The Prepetition Secured Credit Facilities

#### a.      North Atlantic Debt

7.      Debtor ConnectEdu is party to a certain Amended and Restated Purchase Agreement dated as of December 31, 2012, which amends and restates a Purchase Agreement dated as of October 9, 2012 (the "NAV Purchase Agreement") with North Atlantic SBIC IV, L.P. ("North Atlantic").  Pursuant to the NAV Purchase Agreement, ConnectEdu issued to North Atlantic two secured debentures and warrants in exchange for $6,000,000.

8.      In particular, pursuant to the NAV Purchase Agreement, ConnectEdu issued two debentures to North Atlantic (together, the "NAV Debentures"): (i) a 9.50% Senior Subordinated Secured Debenture due October 9, 2018 in the principal amount of $5,000,000, dated December

---

[2] Nothing contained herein constitutes an admission or acknowledgment that any claims, liens or security interests described and identified herein, including the Prepetition Obligations, are valid, enforceable, perfected, allowable, or not subject to disputes, counterclaims, or offsets.  The Debtors reserve any and all rights, claims, and defenses with respect thereto.

9, 2012; and (ii) a 9.50% Senior Subordinated Secured Debenture due October 9, 2018 in the principal amount of $1,000,000, dated December 31, 2012 (together, the "North Atlantic Debt").

9.      Pursuant to a Security Agreement (the "Security Agreement", together with the NAV Purchase Agreement, collectively the "NAV Facility") dated as of December 31, 2012 entered into in connection with the NAV Purchase Agreement, ConnectEdu granted North Atlantic a first priority lien (the "NAV Prepetition Lien") on substantially all of ConnectEdu's assets (the "NAV Collateral"), other than ConnectEdu's stock in Experience.

10.     Debtor AMS executed a Subsidiary Guaranty dated as of December 31, 2012 and guaranteed ConnectEdu's obligations under the NAV Purchase Agreement and the NAV Debentures.

11.     As of the Petition Date, the North Atlantic Debt totaled approximately $6,000,000.

**b.      Experience Debt**

12.     In connection with ConnectEdu's 2011 acquisition of Experience, ConnectEdu and Experience entered into a Merger Agreement dated as of November 28, 2011 (the "Experience Merger Agreement") with, among others, Jennifer Floren Sozzi, as the Stockholders' Representative (in such capacity, the "Experience Former Stockholders' Representative") under which ConnectEdu acquired all of the issued and outstanding stock of Experience from the former Experience stockholders (the "Former Experience Stockholders") and Experience became a wholly owned subsidiary of ConnectEdu (the "Experience Merger").

13.     In connection with the Experience Merger, ConnectEdu issued an Amended and Restated Promissory Note dated August 3, 2012 (as amended, the "Experience Note") to the Experience Former Stockholders' Representative for her own benefit and the benefit of the other Former Experience Stockholders, in the aggregate original principal amount of $6,476,000,

which represented deferred purchase price payable by ConnectEdu under the Experience Merger Agreement.

14.     Pursuant to a Pledge Agreement dated as of November 28, 2011 (the "Experience Pledge Agreement"), by and between ConnectEdu and the Experience Former Stockholders' Representative, ConnectEdu granted to the Experience Former Stockholders' Representative, for her own benefit and the benefit of the other Former Experience Stockholders, a first lien (the "Experience Lien", and together with the NAV Prepetition Lien, collectively the "Prepetition Liens") on the stock of Experience (the "Experience Pledged Securities", together with the NAV Collateral, collectively the "Prepetition Collateral").[3]

15.     Pursuant to the Experience Merger Agreement, ConnectEdu is also obligated to pay certain contingent consideration to the Experience Former Stockholders' Representative for her own benefit and the benefit of the other Former Experience Stockholders (ConnectEdu's outstanding indebtedness arising under the Experience Merger Agreement and the underlying Experience Note, are together, the "Experience Debt").

16.     On August 3, 2012, ConnectEdu and Experience entered into a letter agreement (the "Experience 2012 Letter Agreement") with the Experience Former Stockholders' Representative, for her own benefit and the benefit of the other Former Experience Stockholders, pursuant to which the parties amended and restated the Experience Note and amended certain provisions of the Merger Agreement.

17.     On July 16, 2013, ConnectEdu and Experience entered into a letter agreement (the "Experience 2013 Letter Agreement", together with the Experience 2012 Letter Agreement, the Experience Note, and the Experience Pledge Agreement, collectively the "Experience Facility"; and the Experience Facility together with the NAV Facility, collectively the "Prepetition

---

[3] Not all of the Debtors' cash or other assets is subject to the Prepetition Secured Parties' Prepetition Liens.

Facilities") with the Experience Former Stockholders' Representative, for her own benefit and the benefit of the other Former Experience Stockholders, pursuant to which the parties restructured the Experience Debt, by, among other things, amending the payment terms of the Experience Note and fixing the amount of contingent consideration and securing the previously unsecured portion of the Experience Debt by the Experience Pledged Securities, thereby rendering all of the Experience Debt secured pursuant to the terms of the Experience Pledge Agreement.

18.    ConnectEdu's obligations under the Experience Note mature on June 30, 2014, at which time the total amount due on the Experience Debt will be $4.7 million.

**Need for Financial Restructuring and Use of Cash Collateral**

19.    As detailed in the First Day Declaration, the Debtors are in need of financial restructuring due to liquidity constraints.  Prior to the Petition Date, the Debtors were unable to obtain sufficient financing and thus filed these Chapter 11 Cases.

20.    Accordingly, the Debtors commenced these Chapter 11 Cases to protect, preserve, restructure and maximize the value of their businesses for the benefit of their creditors and stakeholders.

21.    The Debtors have not reached agreement with the Prepetition Secured Parties with respect to the use of Cash Collateral, but intend to work with their Prepetition Secured Parties with regard to same.

**Concise Statement Pursuant to Bankruptcy Rule 4001(b) and Local Rule 4001-2**

22.    Pursuant to Bankruptcy Rule 4001(b) and Local Rule 4001-2, the following is a concise statement and summary of the proposed material terms of the Interim Order:

| Parties with Interest in Cash Collateral | Certain of the Debtors have entered into certain secured Prepetition Facilities with the Prepetition Secured Parties, (i) North Atlantic and (ii) the Experience Former Stockholders' Representative, for her own benefit and the benefit of the other Former Experience |
|---|---|

| | |
|---|---|
| | Stockholders.  Interim Order, ¶ E. |
| **Use of Cash Collateral** | Subject to the terms and conditions of the Interim Order and in accordance with the Budget attached to the Interim Order as Exhibit 1 ("Budget"), the Debtors are authorized to use Cash Collateral through the Final Hearing, or such other date as the Court may direct pursuant to a further order of the Court.  Cash Collateral may be used in the ordinary course of business for general working capital and general corporate purposes, including, but not limited to, payroll and payroll taxes, insurance, and any other needs necessary to operate the Debtors' business and utilities.  Following the date of entry of the Final Order, the Debtors' authority to use Cash Collateral shall be governed by the terms of the Final Order.  Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or any Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Interim Order or further order of the Court.  Interim Order, ¶3. |
| **Adequate Protection Liens** | As adequate protection against any diminution in value solely to the extent any such future diminution is ultimately established by any of the Prepetition Secured Parties ("Diminution in Value"), pursuant to sections 361, 363 and 507(b) of the Bankruptcy Code, the Prepetition Secured Parties are hereby granted additional and replacement continuing valid, binding, enforceable, non-avoidable, and automatically perfected postpetition security interests in and liens (the "Adequate Protection Liens") as follows:

(I) North Atlantic is granted Adequate Protection Liens on any and all presently owned and hereafter acquired personal property, real property and all other assets of Debtor ConnectEdu, together with any proceeds thereof (collectively, the "NAV Adequate Protection Collateral"), but excluding, (a) the Experience Pledged Securities and (b) any of the Debtors' claims or causes of action arising under sections 502(d), 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code and any other avoidance or similar action under the Bankruptcy Code; and

(II) the Experience Former Stockholders' Representative, for her own benefit and the benefit of the other Former Experience Stockholders, is granted Adequate Protection Liens solely in the Experience Pledged Securities (the "Experience Adequate Protection Collateral", and together with the NAV Adequate Protection Collateral, the "Adequate Protection Collateral").

The Adequate Protection Liens shall be junior only to: (A) the Carve Out (defined below) and (B) all prepetition liens and security interests prove of other parties (the "Prior Liens") to the extent any such liens and security interests were valid, properly perfected, non-avoidable and senior in priority to the Prepetition Liens as of the Petition Date.[4]  The Adequate Protection Liens shall otherwise be senior to all other security interests in, liens on, or claims against any of the Adequate Protection Collateral.  Interim Order, ¶ 4(a)-(b). |
| **Adequate Protection Superpriority Claims** | To the extent the Adequate Protection Liens prove insufficient to protect the Prepetition Secured Parties against Diminution of Value, each is hereby granted as and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in these Chapter 11 Cases (the "Adequate Protection Superpriority Claim") and in any successor chapter 7 case (the "Successor Cases").  The Adequate Protection Superpriority Claim will be junior only to the Carve Out (defined below).  Except for the Carve Out, the Adequate Protection Superpriority Claim shall have |

---

[4] Nothing in this Motion, or proposed Interim Order or Final Order shall constitute a finding or ruling by this Court that any such Prior Liens are valid, senior, enforceable, prior, perfected or non-avoidable.  Moreover, nothing shall prejudice the rights of any party in interest including, but not limited, to the Debtors, the Prepetition Secured Parties, and any Committee appointed in these Chapter 11 Cases to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any such Prior Lien and/or security interest.

| | |
|---|---|
| | priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114 of the Bankruptcy Code. Interim Order, ¶ 5(a)-(b). |
| **Carve-Out** | As used in this Interim Order, "Carve Out" means the (i) unpaid fees and interest of the Clerk of the Bankruptcy Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930(a) and 31 U.S.C. § 3717; (ii) reasonable and documented unpaid fees and expenses of professional persons retained by the Debtors or any Committee pursuant to an order of the Court and allowed by an order of the Court in an aggregate amount not to exceed $500,000; and (iii) in the event of a conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, the payment of fees and expenses incurred by a trustee and any professional retained by such trustee, in an aggregate amount not to exceed $25,000 under section 726(b) of the Bankruptcy Code. Interim Order, ¶ 12. |
| **Events of Default/Termination of Use of Cash Collateral** | The occurrence of any of the following events, unless waived in writing by the applicable Prepetition Secured Party shall constitute an event of default (collectively, the "Events of Default"): (a) the failure by the Debtors to perform, in any material respect, any of the terms, provisions, conditions, covenants, or obligations under this Interim Order; (b) reversal, vacatur, or modification of this Interim Order; or (c) dismissal of the Chapter 11 Cases or conversion of the Chapter 11 Cases to chapter 7 cases, or appointment of a chapter 11 trustee. Interim Order, ¶ 9(a)-(c). For purpose of the determination whether an Event of Default has occurred, a variance from the Budget shall not be deemed "material" unless the Debtors (x) achieve less than 70% of their projected aggregate receipts during any two-week period or (y) spend more than 130% of their projected aggregate disbursements during any two-week period. *Id.* |
| **Rights and Remedies Upon Events** | In the event of a default under the terms of this Interim Order, the applicable Prepetition Secured Party may declare a termination, reduction or restriction of the ability of the Debtors to use its Cash Collateral (any such declaration shall be referred to herein as a "Termination Declaration"). The Termination Declaration shall be given by facsimile (or other electronic means) to counsel to the Debtors, counsel to any Committee appointed in these Chapter 11 Cases and the U.S. Trustee (the earliest date any such Termination Declaration is made shall be referred to herein as the "Termination Declaration Date"). Upon the Termination Declaration Date, the applicable Prepetition Secured Party may request a hearing (the "Termination Hearing") on an expedited basis seeking to terminate, modify or restrict the Debtors' use of its Cash Collateral under the terms of this Interim Order. In no event shall the Termination Hearing be held on less than seven (7) days notice to counsel to the Debtors, counsel to any Committee appointed in these Chapter 11 Cases and the U.S. Trustee. Interim Order, ¶ 10. |
| **Reservation of Certain Third Party Rights and Bar of Challenges and Claims** | Nothing in this Interim Order shall prejudice the rights of the Debtors, any committee appointed in these Chapter 11 Cases, a successor trustee and any other party in interest granted standing by the Court, to seek to object to or to challenge, including, but not limited to: (a) the validity, extent, priority, or perfection of the security interests, and liens of any of the Prepetition Secured Parties; or (b) the validity, allowability, priority, secured status or amount of the Prepetition Obligations, provided, however, any such challenge must be filed by a deadline to be set in the Final Order (the "Challenge Deadline"), unless otherwise extended by the Debtors or Court prior to the expiration of the Challenge Deadline. Interim Order, ¶ 11. |
| **Bankruptcy Code section 506(c) Claims** | The Debtors are not waiving any rights under section 506(c) of the Bankruptcy Code. |

23.     The provisions outlined above are fair and necessary for the Debtors to be able to use Cash Collateral to continue their business operations in these Chapter 11 Cases.

**The Proposed Use of Cash Collateral**

24.     The Debtors use the cash generated from their business operations to fund their day-to-day operations and to service other business obligations.

25.     The proposed immediate use of the Cash Collateral is intended to provide working capital while the Debtors operate in chapter 11.  The Debtors require the emergent and immediate postpetition use of Cash Collateral in order to continue operating their businesses in an orderly manner during the pendency of these Chapter 11 Cases.  The Debtors have no other source of funding to operate their business.[5]

26.     The Debtors' ability to use Cash Collateral will allow the Debtors to, among other things, maintain and maximize vendor confidence, pay the wages of their employees and satisfy other ordinary operational costs, including rent, taxes and insurance.  If the Debtors were not authorized to immediately use Cash Collateral on an interim basis, the Debtors would be forced to cease all business operations, thereby causing serious, irreparable harm to the Debtors, their estates, and all their stakeholders.

27.     Indeed, the Debtors use of the Cash Collateral will support the Debtors' efforts to remain a "going concern" which will preserve and maximize the value of the Prepetition Secured Parties' Prepetition Collateral and Adequate Protection Collateral, ensuring adequate protection for the Prepetition Secured Parties' interests.

28.     The Debtors' maintenance of sufficient liquidity to support the continued ordinary course operation of their businesses is absolutely essential to the Debtors' successful

---

[5] The Debtors may negotiate with the Prepetition Secured Parties or other third-party lenders for debtor-in-possession financing that will enable them to operate with additional liquidity during these Chapter 11 Cases.

reorganization. If the Debtors are granted immediate access to Cash Collateral, the Debtors will be able to demonstrate to their vendors, customers and employees that they have sufficient capital to continue operating in the near term. In the absence of the authorization to use Cash Collateral, the Debtors would not be able to sustain their businesses, thereby materially decreasing the value of their estates to the significant detriment of all creditors and stakeholders, including the Prepetition Secured Parties.

**Proposed Adequate Protection**

29.     In order to protect the Prepetition Secured Parties from any actual diminution in value of the Prepetition Collateral, including Cash Collateral, the Debtors have agreed to grant adequate protection in the form of replacement liens and superpriority administrative claims. Specifically, the Prepetition Secured Parties will be granted (i) the Adequate Protection Liens and (ii) the Adequate Protection Superpriority Claim for any Diminution in Value.

**RELIEF REQUESTED**

30.     By this Motion, the Debtors seek entry of the Interim Order (a) authorizing the Debtors to use Cash Collateral; (b) authorizing the Debtors to provide adequate protection for the use of Cash Collateral to the Prepetition Secured Parties; (c) modifying the automatic stay; and (d) scheduling a Final Hearing for the entry of the Final Order, providing for the relief granted herein on a final basis.

**BASIS FOR RELIEF**

I.     **The Use of Cash Collateral is Warranted and Should Be Approved**

31.     The Debtors satisfy the requirements for the use of Cash Collateral. Pursuant to Bankruptcy Code section 363(c)(2), a debtor may not use cash collateral unless "(A) each entity that has an interest in such collateral consents; or (B) the court, after notice and a hearing,

-10-

authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2).

32.     As set forth above, the Debtors' immediate use of Cash Collateral is absolutely necessary in order to enable the Debtors to meet the obligations of their ordinary operating costs and expenses during the pendency of these Chapter 11 Cases.  Among other things, the use of Cash Collateral will enable the Debtors to preserve business relationships with their vendors and customers, pay their employees (current and former), and satisfy other ordinary operational costs that are essential to their continued and remaining operations of their businesses.

33.     In the absence of the immediate authorization to use Cash Collateral, the Debtors' ability to continue their remaining operations in the ordinary course of business will be jeopardized and the failure to do so would no doubt result in immediate and irreparable harm to the Debtors' estates, employees, customers and all stakeholders by virtue of the loss of significant going concern value.  Thus, the use of Cash Collateral is absolutely critical to the Debtors' continued viability and the preservation and maximization of the value of the Debtors' estates.

## II.    The Proposed Adequate Protection Should Be Approved

34.     The adequate protection proposed by the Debtors is reasonable and appropriate and should be approved.  Bankruptcy Code section 363(e) requires that the debtor adequately protect the secured creditors' interest in property to be used by a debtor against any diminution in value of such interest resulting from the debtor's use of the property during the chapter 11 cases. "The concept of 'adequate protection' is not defined in the [Bankruptcy] Code except by the implications of the examples of adequate protection listed in § 361." *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986).  Section 361 of the Bankruptcy Code contains a non-

exhaustive list of acceptable forms of adequate protection, including additional liens, replacement liens, and the "indubitable equivalent of such entity's interest in such property." 11 U.S.C. § 361.

35.    The issue of what constitutes adequate protection must be decided on a case-by-case basis. *See In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996); *In re Realty Sw. Assocs.*, 140 B.R. 360, 366 (Bankr. S.D.N.Y. 1992); *Beker Indus.*, 58 B.R. at 736. The focus of the adequate protection requirement is to preserve the secured creditor's position at the time of the bankruptcy filing and protect the secured creditor from diminution in the value of its collateral during the reorganization process. *Mosello*, 195 B.R. at 288 (citation omitted); *Beker Indus.*, 58 B.R. at 736; *In re WorldCom, Inc.*, 304 B.R. 611, 618-19 (Bankr. S.D.N.Y. 2004) ("The legislative history of section 361 of the Bankruptcy Code, which sets forth how adequate protection may be provided under section 363, makes clear that the purpose of providing adequate protection is to insure that the secured creditor receives the value for which the creditor bargained for prior to the debtor's bankruptcy."). "However, neither the legislative history nor the Bankruptcy Code require the Court to protect a creditor beyond what was bargained for by the parties." *Worldcom*, 304 B.R. at 619; see *Beker Indus.*, 58 B.R. at 741 ("Adequate protection, not absolute protection, is the statutory standard.").

36.    Here, as discussed further below, the Prepetion Lenders' secured interests in the Prepetition Collateral are adequately protected in light of (a) the Debtors' use of Cash Collateral to preserve value; and (b) the protections to be provided the Prepetition Secured Parties against Diminution in Value of the Prepetition Collateral.

a.    **The Prepetition Secured Parties are Protected By the Debtors' Use of Cash Collateral Which Preserves Value**

37.    The Prepetition Secured Parties are adequately protected because the Debtors propose to use the Cash Collateral to preserve the value of the Prepetition Collateral, including the NAV Collateral and Experience Pledged Securities.  As further set forth below, the Debtors have proposed providing the Prepetition Secured Parties with replacement liens on certain post-petition collateral (*i.e.* the Adequate Protection Collateral) to the extent of any Diminution in Value of the Prepetition Collateral.  Importantly, the mere existence of any postpetition collateral will depend on the Debtors' ability to use the Prepetition Collateral, including Cash Collateral.

38.    Courts generally have found that secured creditors are adequately protected and have authorized the use of cash collateral where the proposed continued use of Cash Collateral will preserve the value of the secured creditors' other collateral, providing adequate protection. *See, e.g., In re Salem Plaza Assocs.*, 135 B.R, 753, 758 (Bankr. S.D.N.Y. 1992) (holding that debtor's use of cash collateral from shopping center to pay operating expenses, thereby "preserv[ing] the base that generates the income stream," provided adequate protection to the secured creditor); *In re Constable Plaza Assocs., L.P.*, 125 B.R. 98, 104-05 (Bankr. S.D.N.Y. 1991) (noting use of cash collateral would "preserve or enhance the value of the building [collateral] which, in turn, will protect the collateral covered by [the] mortgage").  Indeed, courts have considered the preservation and enhancement of collateral to be a critical component of adequate protection.  For example, in determining the sufficiency of adequate protection, courts have considered "whether the value of the debtor's property will increase as a result of the" use of the collateral.  *In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992).

             **b.**      **The Proposed Adequate Protection Liens Provide the Prepetition Secured Parties with Further Adequate Protection**

39.      To the extent that the equity cushion described above is insufficient to provide adequate protection, the Debtors propose to provide the Prepetition Secured Parties protection against any depreciation in the value of the Prepetition Collateral.  As set forth in section 361 of the Bankruptcy Code, additional liens and "replacement liens to the extent" of diminution in value of prepetition collateral are an accepted form of adequate protection.

40.      The Prepetition Secured Parties are being granted the Adequate Protection Liens on the Adequate Protection Collateral in the same priority as existed prior to the Petition Date to adequately protect against any the Diminution in Value of the Prepetition Collateral.  In addition, the Prepetition Secured Parties will each be granted the Administrative Superpriority Claim.

41.      The foregoing forms of adequate protection will sufficiently protect the interests of the Prepetition Secured Parties in the Cash Collateral.  Thus, the adequate protection proposed by the Debtors is fair and reasonable and sufficient to satisfy the requirements of Bankruptcy Code section 363(c).

**III.**      **Interim Approval Should Be Granted**

42.      Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral may not be commenced earlier than 14 days after the service of such motion.  Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing.

43.      Pursuant to Bankruptcy Rule 4001(b), the Debtors request that the Court conduct an expedited preliminary hearing on the Motion and (i) authorize the Debtors to use the Cash Collateral of the Prepetition Secured Parties in order to (a) maintain and finance the ongoing

operations of the Debtors during the pendency of these Chapter 11 Cases and (b) avoid immediate and irreparable harm and prejudice to the Debtors' estates, all parties in interest, and the public; and (ii) schedule the Final Hearing on the relief requested herein.

44.    Absent authorization from the Court to use Cash Collateral on an interim basis pending a Final Hearing, the Debtors will be immediately and irreparably harmed.  As set forth above and in the First Day Declaration, the Debtors' ability to use Cash Collateral on the terms described herein is critical to their ability to operate their business in the ordinary course. Without the liquidity provided by the use of Cash Collateral, the Debtors' businesses will be brought to an immediate halt leading to the loss of significant value.  The Debtors' ability to maintain business relationships with their customers and vendors and to meet payroll and other operating expenses will be compromised without the use of Cash Collateral.  In short, serious, immediate and irreparable harm to the Debtors and their estates would occur, with disastrous consequences for the Debtors, their estates, and creditors, if the Debtors do not obtain the immediate relief requested herein.

## **REQUEST FOR FINAL HEARING**

45.    Pursuant to Bankruptcy Rule 4001(b)(2), the Debtors request that the Court set a date for the Final Hearing that is as soon as practicable but within approximately thirty (30) days of the Petition Date, and fix the time and date prior to the Final Hearing for parties to file objections to the Motion.

## **WAIVER OF BANKRUPTCY RULES 6004(a) AND 6004(h)**

46.    To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).  Pursuant to Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the

expiration of 14 days after entry of the order, unless the court orders otherwise." As set forth above, the proposed granting of Adequate Protection Liens and the Adequate Protection Superpriority Claim is essential to prevent potentially irreparable damage to the Debtors' operations, value, and ability to reorganize. Accordingly, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent it applies.

## NOTICE

47.    Notice of this Motion has been given to (i) Counsel to North Atlantic SBIC IV, L.P., Nixon Peabody LLP, 100 Summer Street, Boston, Massachusetts 02110, Attn: Rick Pedone, Esq. and David Martland, Esq.; (ii) Counsel to the Experience Former Stockholders Representative, Latham & Watkins LLP, 355 South Grand Avenue, Los Angeles, California 90071, Attn: Peter M. Gihuly, Esq.; (iii) the Debtors' twenty largest unsecured creditors; (iv) the Office of the United States Trustee for the Southern District of New York; (v) the Internal Revenue Service; and (vi) those parties who have filed a notice of appearance and request for service of pleadings in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

## NO PRIOR REQUEST

48.    No previous motion for the relief sought herein has been made to this or to any other court.

**WHEREFORE**, the Debtors respectfully request that this Court: (a) enter an Interim Order in the form submitted herewith granting the relief requested herein; and (b) grant to the Debtors such other and further relief as the Court may deem proper.

Dated:  April 29, 2014

Respectfully submitted,

**LOWENSTEIN SANDLER LLP**

/s/ *Sharon L. Levine*
Sharon L. Levine, Esq.
Wojciech F. Jung, Esq.
Jillian L. Zadie, Esq.
1251 Avenue of the Americas, 17th Floor
New York, New York  10020
(212) 262-6700 (Telephone)
(212) 262-7402 (Facsimile)

-and-

65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

*Proposed Counsel to the Debtors and Debtors-in-Possession*
