**Presentment of Bidding Procedures Order (Exhibit A):**
**Presentment Date: May 16, 2014 at 9:30 a.m. (prevailing Eastern time)**
**Objection Deadline: May 16, 2014 at 9:00 a.m. (prevailing Eastern time)**
**Hearing Date (only if objections are filed): May 16, 2014 at 10:00 a.m. (prevailing Eastern time)**

**LOWENSTEIN SANDLER LLP**
Sharon L. Levine, Esq.
Wojciech F. Jung, Esq.
Nicole Stefanelli, Esq.
Jillian L. Zadie, Esq.
1251 Avenue of the Americas, 17th Floor
New York, New York 10020
(212) 262-6700 (Telephone)
(212) 262-7402 (Facsimile)

-and-

65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

*Proposed Counsel to the Debtors and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| ConnectEdu, Inc., *et al.*, [1] | Case No. 14-11238 (SCC) |
| | (Jointly Administered) |
| Debtors. | |

**DEBTORS' MOTION FOR ORDERS (I) APPROVING (A) BIDDING PROCEDURES,
(B) FORM AND MANNER OF SALE NOTICES, AND (C) SALE HEARING DATE
AND (II) AUTHORIZING AND APPROVING (A) SALE OF SUBSTANTIALLY
ALL OF THEIR ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND
ENCUMBRANCES AND (B) ASSUMPTION AND ASSIGNMENT OF
CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: (1) ConnectEdu, Inc. (8132) ("ConnectEdu") and its direct subsidiaries: (2) Experience, Inc. (0757) ("Experience"); and (3) Academic Management Systems, Inc. (0844) ("AMS"). The location of the Debtors' corporate headquarters is 600 Atlantic Avenue, 20th Floor, Boston, MA 02210.

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through their proposed counsel, submit this motion (the "Motion"), for entry of orders pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (i) approving (a) bidding procedures, (b) form and manner of sale notices, and (c) sale hearing date, and (ii) authorizing and approving (a) the sale of substantially all of their assets[2] free and clear of liens, claims, and encumbrances and (b) assumption and assignment of certain executory contracts and unexpired leases. In support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2). Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief sought herein are sections 105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014, the applicable Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), and the Amended Guidelines for the Conduct of Asset Sales, General Order M-383 of the Bankruptcy Court for the Southern District of New York (the "SDNY Sale Guidelines").

---

[2]      The Debtors are engaged in negotiations to sell, by separate order, the issued and outstanding capital stock of Debtor AMS and certain assets of Connect held  or used in connection with the conduct of AMS' business (the "AMS Assets") to North Atlantic (defined below).  It is uncertain at this time whether such negotiations will ultimately culminate in a sale of the AMS Assets.  To the extent the Debtors close on the sale of the AMS Assets to North Atlantic, such assets shall not be subject to a sale under this Motion.

# BACKGROUND

## A.    General Background

3.    On April 28, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").

4.    The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the date of the filing of this Application, no trustee, examiner or committee has been requested or appointed.

5.    By order dated May 1, 2014, this Court authorized the joint administration of these Chapter 11 Cases. *See* Docket No. 25.

6.    Additional background facts surrounding the commencement of these Chapter 11 Cases are more fully described in the *Declaration in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 18] (the "First Day Declaration").

## B.    The Debtors' Prepetition Secured Indebtedness

7.    As of the Petition Date, certain of the Debtors had outstanding secured debt totaling approximately $10.7 million (the "Prepetition Obligations").[3]    The Prepetition Obligations are comprised of approximately (i) $6 million of outstanding secured indebtedness owing to North Atlantic SBIC IV, L.P. ("North Atlantic") and (ii) $4.7 million owing to the Experience Former Stockholders' Representative (as defined below, together with North Atlantic, the "Prepetition Secured Parties"), for her own benefit and the benefit of the other Former Experience Stockholders (as defined below) pursuant to, *inter alia*, the Experience Debt (as defined below) and the Experience 2013 Letter Agreement (as defined below).

---

[3]    Except with regard to North Atlantic, nothing contained herein constitutes an admission or acknowledgment that any claims, liens or security interests described and identified herein, including the Prepetition Obligations, are valid, enforceable, perfected, allowable, or not subject to disputes, counterclaims, or offsets. The Debtors reserve any and all rights, claims, and defenses with respect thereto.

**C.**      **The Prepetition Secured Credit Facilities**

    **(i)**      **North Atlantic Debt**

8.      Debtor ConnectEdu is party to a certain Amended and Restated Purchase Agreement dated as of December 31, 2012, which amends and restates a Purchase Agreement dated as of October 9, 2012 (the "NAV Purchase Agreement") with North Atlantic SBIC IV, L.P. ("North Atlantic").  Pursuant to the NAV Purchase Agreement, ConnectEdu issued to North Atlantic two secured debentures and warrants in exchange for $6,000,000.

9.      In particular, pursuant to the NAV Purchase Agreement, ConnectEdu issued two debentures to North Atlantic (together, the "NAV Debentures"): (i) a 9.50% Senior Subordinated Secured Debenture due October 9, 2018 in the principal amount of $5,000,000, dated December 9, 2012; and (ii) a 9.50% Senior Subordinated Secured Debenture due October 9, 2018 in the principal amount of $1,000,000, dated December 31, 2012 (together, the "North Atlantic Debt").

10.      Pursuant to a Security Agreement (the "Security Agreement", together with the NAV Purchase Agreement, collectively the "NAV Facility") dated as of December 31, 2012 entered into in connection with the NAV Purchase Agreement, ConnectEdu granted North Atlantic a first priority lien (the "NAV Prepetition Lien") on substantially all of ConnectEdu's assets (the "NAV Collateral"), other than ConnectEdu's stock in Experience.

11.      Debtor AMS executed a Subsidiary Guaranty dated as of December 31, 2012 and guaranteed ConnectEdu's obligations under the NAV Purchase Agreement and the NAV Debentures.

12.      As of the Petition Date, the North Atlantic Debt totaled approximately $6,000,000.

    **(ii)**      **Experience Debt**

13.      In connection with ConnectEdu's 2011 acquisition of Experience, ConnectEdu and Experience entered into a Merger Agreement dated as of November 28, 2011 (the "Experience Merger Agreement") with, among others, Jennifer Floren Sozzi, as the Stockholders' Representative (in such capacity, the "Experience Former Stockholders'

<u>Representative</u>") under which ConnectEdu acquired all of the issued and outstanding stock of Experience from the former Experience stockholders (the "<u>Former Experience Stockholders</u>") and Experience became a wholly owned subsidiary of ConnectEdu (the "<u>Experience Merger</u>").

14.   In connection with the Experience Merger, ConnectEdu issued an Amended and Restated Promissory Note dated August 3, 2012 (as amended, the "<u>Experience Note</u>") to the Experience Former Stockholders' Representative for her own benefit and the benefit of the other Former Experience Stockholders, in the aggregate original principal amount of $6,476,000, which represented deferred purchase price payable by ConnectEdu under the Experience Merger Agreement.

15.   Pursuant to a Pledge Agreement dated as of November 28, 2011 (the "<u>Experience Pledge Agreement</u>"), by and between ConnectEdu and the Experience Former Stockholders' Representative, ConnectEdu granted to the Experience Former Stockholders' Representative, for her own benefit and the benefit of the other Former Experience Stockholders, a first lien (the "<u>Experience Lien</u>", and together with the NAV Prepetition Lien, collectively the "<u>Prepetition Liens</u>") on the stock of Experience (the "<u>Experience Pledged Securities</u>", together with the NAV Collateral, collectively the "<u>Prepetition Collateral</u>").[4]

16.   Pursuant to the Experience Merger Agreement, ConnectEdu is also obligated to pay certain contingent consideration to the Experience Former Stockholders' Representative for her own benefit and the benefit of the other Former Experience Stockholders (ConnectEdu's outstanding indebtedness arising under the Experience Merger Agreement and the underlying Experience Note, are together, the "<u>Experience Debt</u>").

17.   On August 3, 2012, ConnectEdu and Experience entered into a letter agreement (the "<u>Experience 2012 Letter Agreement</u>") with the Experience Former Stockholders' Representative, for her own benefit and the benefit of the other Former Experience Stockholders,

---

[4]   Not all of the Debtors' cash or other assets is subject to the Prepetition Secured Parties' Prepetition Liens.

pursuant to which the parties amended and restated the Experience Note and amended certain provisions of the Merger Agreement.

18.     On July 16, 2013, ConnectEdu and Experience entered into a letter agreement (the "Experience 2013 Letter Agreement", together with the Experience 2012 Letter Agreement, the Experience Note, and the Experience Pledge Agreement, collectively the "Experience Facility"; and the Experience Facility together with the NAV Facility, collectively the "Prepetition Facilities") with the Experience Former Stockholders' Representative, for her own benefit and the benefit of the other Former Experience Stockholders, pursuant to which the parties restructured the Experience Debt, by, among other things, amending the payment terms of the Experience Note and fixing the amount of contingent consideration and securing the previously unsecured portion of the Experience Debt by the Experience Pledged Securities, thereby rendering all of the Experience Debt secured pursuant to the terms of the Experience Pledge Agreement.

19.     ConnectEdu's obligations under the Experience Note mature on June 30, 2014, at which time the total amount due on the Experience Debt will be $4.7 million.

**D.     Post-Petition Use of Cash Collateral**

20.     By order dated May 1, 2014 [Docket No. 33], the Debtors were authorized to use the Prepetition Secured Parties' cash collateral, in accordance with the terms of such order and the budget attached thereto, on an interim basis through May 7, 2014.

21.     By order dated May 7, 2014 [Docket No. 52], the Debtors were authorized to use the Prepetition Secured Parties' cash collateral, in accordance with the terms of such order and the budget attached thereto, on an interim basis through the earlier of May 16, 2014 or such other date as the Court may direct pursuant to a further order.

**RELIEF REQUESTED**

22.     By this Motion, the Debtors seek (i) the entry of an order substantially in the form attached hereto as Exhibit A (the "Bidding Procedures Order") approving (a) the

Bidding Procedures, (b) form and manner of sale notices, and (c) sale hearing date; and (ii) subject to the terms of the Bidding Procedures Order, at a hearing to be scheduled by the Bankruptcy Court, entry of an order substantially in the form attached hereto as <u>Exhibit B</u> (the "<u>Sale Order</u>"), authorizing and approving (a) the sale of substantially all of their assets to the Successful Bidder (defined below) (the "<u>Sale</u>") free and clear of free and clear of liens, claims, and encumbrances (collectively, "<u>Encumbrances</u>") and (b) and assumption and assignment of certain executory contracts and unexpired leases.

## A.     The Proposed Sale

23.     By this Motion, the Debtors propose to sell substantially all of their assets to the Successful Bidder free and clear of Encumbrances, with any such Encumbrances to attach to the proceeds of the Sale.  As set forth below and in the Bidding Procedures, the Debtors expressly reserve the right to designate a Stalking Horse Bidder prior to the Auction (as defined below) and to provide certain bidding protections to such Stalking Horse Bidder, which bidding protections, if any, will be subject to Bankruptcy Court approval.

## B.     The Proposed Bidding Procedures.

24.     The Debtors request approval of the bidding procedures (the "<u>Bidding Procedures</u>") attached as <u>Exhibit 1</u> to the Bidding Procedures Order is requested.   The Bidding Procedures describe, among other things, the assets available for sale, the manner in which bidders and bids become "qualified," the coordination of diligence efforts among bidders, the receipt and negotiation of bids received, the conduct of any subsequent Auction (as defined below), the ultimate selection of the Successful Bidder, and the Bankruptcy Court's approval of one or more Sale(s).

25.    The proposed Bidding Procedures provide for the solicitation of proposals or offers (each, a "<u>Bid</u>") by any potential bidder (each, a "<u>Bidder</u>"), pursuant to the following conditions:[5]

(a)    **Assets To Be Sold**.  The assets proposed to be sold are all or substantially all of the Debtors' assets (the "<u>Purchased Assets</u>").[6]

(b)    **As Is, Where Is**.  The Sale of the Purchased Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by any of the Debtors, their agents, or their estates.

(c)    **Free of Any and All Claims and Interests**.  The Purchased Assets shall be sold free and clear of all Encumbrances and any Encumbrances shall attach to the net proceeds of the Sale of the Purchased Assets.

(d)    **Participation Requirements**.  To ensure that only Bidders with a serious interest in the purchase of the Purchased Assets participate, the Bidding Procedures provide for certain minimal requirements for a Bidder to become a "<u>Qualified Bidder</u>."  These requirements include that the Bidder must provide, in form and substance satisfactory to the Debtors, in advance of the Bid Deadline (as defined below), the following: (i) an executed confidentiality agreement, substantially in the form attached as <u>Exhibit 2</u> to the Bidding Procedures Order; (ii) certain financial assurances as to such Bidder's ability to close a transaction, and (iii) a preliminary proposal reflecting any Purchased Assets expected to be excluded and the purchase price range.  Each of the Prepetition Secured Parties shall automatically be deemed to be a Qualified Bidder without the need to comply with any of the foregoing requirements.

(e)    **Due Diligence**.  The Bidding Procedures permit each Bidder (before or after becoming a Qualified Bidder) an opportunity to participate in the diligence process after executing and delivering executed confidentiality agreement, substantially in the form attached as <u>Exhibit 2</u> to the Bidding Procedures Order.  The Debtors will coordinate the diligence process and provide due diligence access and information as reasonably requested by any Bidder executing a confidentiality agreement.  It is expected that Bidders will complete all due diligence in connection with the Purchased Assets and the Auction prior to the Bid Deadline and, in any event,

---

[5]    This section describes the salient provisions of the Bidding Procedures.  For a complete description of the Bidding Procedures, parties are referred to <u>Exhibit 1</u> to the proposed Bidding Procedures Order.

[6]    As set forth above, to the extent the Debtors close on the sale of the AMS Assets to North Atlantic, such assets shall not be subject to a sale under this Motion.

without the written consent of the Debtors, no Bid may be subject to any closing condition relating to completion of additional due diligence.

(f)     **Bid Deadline**.  The Bidding Procedures provide that Bids shall be due no later than **May 23, 2014 at 3:00 p.m. (prevailing Eastern time)** (the "Bid Deadline").  All Bids must be submitted by e-mail and Federal Express on or before the Bid Deadline to (i) the Debtors' Chief Restructuring Officer, Mark D. Podgainy, Getzler Henrich & Associates LLC, 295 Madison Avenue,     20th     Floor,     New     York,     NY     10017, mpodgainy@getzlerhenrich.com   and   (ii)   counsel   to   the   Debtors, Lowenstein Sandler LLP, 65 Livingston Avenue, Roseland, New Jersey 07068, Attention: Sharon L. Levine, Esq.  slevine@lowenstein.com, Wojciech F. Jung, Esq.  wjung@lowenstein.com and Nicole Stefanelli, Esq. nstefanelli@lowenstein.com.

(g)     **Qualified Bid Requirements**.  All Bids must be in writing acceptable to the Debtors and include the following: (i) a binding, executed, definitive agreement, substantially in the form attached as Exhibit 3 to the Bidding Procedures Order and marked to show the amendments and modifications thereto, offering minimum cash consideration of (x) $200,000 for one Contract or (y) $500,000 for assets including more than one Contract, plus (z) the assumption of all Cure Amounts (as defined below); (ii) confirmation that the Bidder's offer is irrevocable until immediately following the closing of the Sale; (iii) a good faith deposit (the "Good Faith Deposit") equal to ten percent (10%) of the bid amount; (iv) evidence of a binding commitment for financing, available cash, undrawn lines of credit, or other ability to obtain the funds necessary to consummate the proposed transaction; (v) a commitment to consummate the purchase of the Purchased Assets within not more than five (5) days after entry of the Sale Order by the Bankruptcy Court, and (vi) evidence of corporate authority to enter into such transaction (such a Bid, a "Qualified Bid").  A Qualified Bid must not contain any conditions to closing other than Bankruptcy Court approval.  The Debtors shall have the right to deem a Bid a Qualified Bid even if such Bid does not conform to one or more of the aforementioned requirements.

Each Qualified Bidder, by submitting a Bid, shall be deemed to acknowledge and agree that it (i) is not relying upon any written or oral statements, representations, promises, warranties or guarantees of any kind whether expressed or implied, by operation of law or otherwise, made by any person or party including the Debtors and their respective agents and representatives, regarding the Purchased Assets, the Bidding Procedures or any information provided in connection therewith and (ii) consents to the jurisdiction of the Bankruptcy Court.

Nothing herein shall alter the rights of any Prepetition Secured Party under section 363(k) of the Bankruptcy Code.

(h)    **Designation of Stalking Horse Bidder**. The Debtors reserve the right to agree to a minimum purchase price with a proposed purchaser (the "Stalking Horse Bidder") who subsequently agrees to have its Qualified Bid serve as a "stalking horse" Bid at the Auction (the "Stalking Horse Bid"). The Debtors shall file notice of any Stalking Horse Bid and serve it on (i) counsel for any statutory committee and (ii) the Office of the United States Trustee within one (1) business day of the designation of such Stalking Horse Bid.

(i)    **No Auction Required**. If no Qualified Bids are submitted by the Bid Deadline, the Debtors shall not conduct an Auction. If only one Qualified Bid is submitted by the Bid Deadline, the Debtors shall not conduct the Auction and shall promptly seek Bankruptcy Court approval to enter into and consummate such transaction.

(j)    **Auction Required**. If more than one Qualified Bid is submitted by the Bid Deadline, the Debtors shall conduct an Auction **on May 27, 2014 at 9:30 a.m. (prevailing Eastern time)** at the offices of Lowenstein Sandler LLP, 1251 Avenue of the Americas, New York, New York, in accordance with the following procedures: (i) attendance at the Auction will be limited to the Debtors, each Qualified Bidder that has timely submitted a Qualified Bid, any other party with a security interest in property owned or leased by the Debtors (including any prepetition lenders), any representative of any statutory committee, and the advisers to each of the foregoing, and only Qualified Bidders will be entitled to make any subsequent Qualified Bids at the Auction; (ii) by 8:00 p.m. (prevailing Eastern time) on the day before the Auction, the Debtors will (a) notify each Qualified Bidder that has timely submitted a Qualified Bid that its Bid is a Qualified Bid and (b) will provide such Qualified Bidders with copies of the Qualified Bid that the Debtors believe is the highest or otherwise best offer for the Purchased Assets (the "Baseline Bid"), (iii) all Qualified Bidders that have timely submitted a Qualified Bid will be entitled to be present for all bidding at the Auction, and (iv) bidding at the Auction will begin with the Baseline Bid, continue in minimum increments of at least $100,000 (the "Minimum Overbid Increment"), and conclude after each participating Bidder has had the opportunity to submit one or more additional Bids.

The Debtors may conduct the Auction, and adopt additional rules with respect thereto, in the manner the Debtors determine in their reasonable discretion will result in the highest and best Bids for the Purchased Assets.

(k)    **Selection of Successful Bid**. After the conclusion of the Auction, the Debtors shall select the highest or otherwise best Qualified Bid (or Bids), after taking into account such factors as the price of such bids, the form and structure of the bids and any tax considerations, and shall promptly seek Bankruptcy Court approval to enter into and consummate such

transaction(s) (a "<u>Successful Bid</u>") and the Bidder making such Bid (the "<u>Successful Bidder</u>").

(l)    **<u>Sale Hearing</u>**.  The Debtors seek to have a hearing to consider approval of the Sale (the "<u>Sale Hearing</u>") on **May 29, 2014 at 2:00 p.m. (prevailing Eastern time)**, or if the Auction has not been held by such date, on the second business day following the Auction or as soon thereafter as the Bankruptcy Court's calendar will permit, before the Honorable Shelley C. Chapman, U.S.B.J., United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, NY 10004, at which time the Bankruptcy Court shall consider the Motion and the Successful Bid, and confirm the results of the Auction, if any.  The Sale Hearing may be adjourned or rescheduled without notice other than by an announcement of the adjourned date at the Sale Hearing.  If the Debtors receive more than one Qualified Bid, then, at the Sale Hearing, the Debtors shall seek approval of the Successful Bid, and may also seek approval of the second highest or best Qualified Bid (the "<u>Alternate Bid</u>" and such Bidder, the "<u>Alternate Bidder</u>").  The Debtors will not be bound by a Successful Bid or Alternate Bid unless and until such Bid shall have been approved by the Bankruptcy Court pursuant to an unstayed order.  Following approval of the Sale to the Successful Bidder, if the Successful Bidder fails to consummate the Sale for any reason, then the Alternate Bid will be deemed to be the Successful Bid and the Debtors will effectuate a Sale to the Alternate Bidder without further order of the Bankruptcy Court, and the Debtors and any other person may pursue any and all remedies available under law against the Successful Bidder in connection with its failure to consummate such Sale.

(m)    **<u>Return of Good Faith Deposits</u>**.  Good Faith Deposits of all Successful Bidders and Alternate Bidders shall be held in an interest-bearing escrow account by counsel for the Debtors and the Alternate Bids shall remain open and not returned (notwithstanding Bankruptcy Court approval of a Sale pursuant to the terms of one or more Successful Bids), until two business days following the closing (the "<u>Deposit Return Date</u>") of the Sale to the Successful Bidder.  The Good Faith Deposits of all other Qualified Bidders will be returned within 48 hours of the Auction.  The Good Faith Deposit(s) submitted by the Successful Bidder, together with interest thereon, shall be applied against the payment of the cash portion of the purchase price upon closing of the Sale to the Successful Bidder.  In the event a Bidder fails to close through its own default, its Good Faith Deposit shall be released to the Debtors.  On the Deposit Return Date, the Debtors will return the Good Faith Deposits of all other Successful Bidders and Alternative Bidders with accrued interest.

(n)    **<u>Reservation of Rights</u>**.  Notwithstanding anything to the contrary herein, the Debtors reserve the right, in their business judgment, to modify the Bidding Procedures at any time, with notice to Bidders and potential

Bidders, including, without limitation, to (i) accept Bids for less than all or substantially all of their assets, (ii) to adjourn the Auction, the Sale Hearing or any of the dates set forth herein one or more times for any reason, (iii) increase or decrease the Minimum Overbid Increment, (iv) terminate the Bidding Procedures at any time to pursue confirmation of a Plan or an alternative restructuring strategy that maximizes value for the Debtors' estates, (v) determine which Qualified Bid, if any, is the Successful Bid and the Alternate Bid, (vi) reject at any time, any bid that is: (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of the Sale, or (c) contrary to the best interests of the Debtors, the Debtors' estates and creditors, or (vii) accept as a Qualified Bidder or Qualified Bid a Bidder or Bid that does not otherwise meet the requirements set forth in the Bidding Procedures.

**C.**      **Notice of Sale Hearing, Auction, Bidding Procedures, and Objection Dates.**

26.      Within three (3) days after entry of the Bidding Procedures Order (the "Mailing Date"), notice of the Sale substantially in the form attached as Exhibit 4 to the Bidding Procedures Order (the "Sale Notice"), along with the Bidding Procedures Order and the Bidding Procedures, shall be served by either electronic mail or first-class mail, postage prepaid, upon: (i) counsel to North Atlantic SBIC IV, L.P., Nixon Peabody LLP, 100 Summer Street, Boston, Massachusetts 02110, Attn: Rick Pedone, Esq. and David Martland, Esq.; (ii) counsel to Experience Former Stockholders Representative, Latham & Watkins LLP, 355 South Grand Avenue, Los Angeles, California 90071, Attn: Peter M. Gihuly, Esq.; (iii) the Office of the United States Trustee for the Southern District of New York, Attn: Susan Golden, Esq.; (iv) all entities known to have expressed an interest in a transaction with respect to the Purchased Assets; (v) all entities known to have asserted any lien, claim, interest, or encumbrance in or upon the Purchased Assets; (vi) all non-Debtor counterparties to any executory contract or unexpired lease that may be assumed and assigned to the Successful Bidder; (vii) all federal, state, and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by the Motion; (viii) the United States Attorney's office; (ix) the Securities and Exchange Commission; (x) the Internal Revenue Service; (xi) all known creditors of the Debtors; (xii) counsel to any statutory committee appointed in these Chapter 11

Cases; and (xii) those parties who have filed a notice of appearance and request for service of pleadings in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002.

27.    The Debtors request that if any party objects to the relief requested in the Motion, that such party be required to file an objection (the "Sale Objection") on or before **May 28, 2014 at 11:00 a.m. (prevailing Eastern time)** (the "Sale Objection Deadline") and serve a copy of the Sale Objection, so as to be actually received by the Sale Objection Deadline, upon (i) the Debtors' Chief Restructuring Officer, Mark D. Podgainy, Getzler Henrich & Associates LLC, 295 Madison Avenue, 20th Floor, New York, NY 10017, mpodgainy@getzlerhenrich.com; (ii) counsel to the Debtors, Lowenstein Sandler LLP, 65 Livingston Avenue, Roseland, New Jersey 07068, Attention: Sharon L. Levine, Esq. slevine@lowenstein.com, Wojciech F. Jung, Esq. wjung@lowenstein.com and Nicole Stefanelli, Esq. nstefanelli@lowenstein.com; (iii) counsel to any statutory committee; and (iv) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Room 1006, New York, NY 10014, Attn: Susan Golden, Esq.

**D.    Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Pursuant to Section 365 of the Bankruptcy Code**

28.    In connection with the Sale, the Debtors may be required to assume and assign certain executory contracts and unexpired leases to the Successful Bidder.  To facilitate the assumption and assignment of any such executory contracts and unexpired leases, the Debtors propose the following procedures (the "Assumption Procedures").

(a)    Within three (3) days after entry of the Bidding Procedures Order, the Debtors shall serve on all non-Debtor counterparties to any executory contract or unexpired lease that may be assumed and assigned to the Successful Bidder, a notice substantially in the form attached as Exhibit 5 to the Bidding Procedures Order (the "Assumption Notice"), that identifies (i) the contract, (ii) the name of the non-debtor counterparty to such contract and (iii) the calculation of the undisputed cure amount (the "Cure Amount") that must be paid to cure all prepetition defaults under such contract in the event it is ultimately assumed by the Successful Bidder.

(b)    Objections, if any, to the proposed assumption and assignment of the any contract or unexpired lease, including, but not limited to, objections

relating to the Cure Amount and/or adequate assurance of future performance (each, an "Assumption Objection"), must be filed on or before **May 27, 2014 at 9:30 a.m. (prevailing Eastern time)** (the "Assumption Objection Deadline") and served, so as to be actually received by the Assumption Objection Deadline, upon: (i) the Debtors' Chief Restructuring Officer, Mark D. Podgainy, Getzler Henrich & Associates LLC, 295 Madison Avenue, 20th Floor, New York, NY 10017, mpodgainy@getzlerhenrich.com; (ii) counsel to the Debtors, Lowenstein Sandler LLP, 65 Livingston Avenue, Roseland, New Jersey 07068, Attention: Sharon L. Levine, Esq. slevine@lowenstein.com, Wojciech F. Jung, Esq. wjung@lowenstein.com and Nicole Stefanelli, Esq. nstefanelli@lowenstein.com; (iii) counsel to any statutory committee; and (iv) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Room 1006, New York, NY 10014, Attn: Susan Golden, Esq. Any Assumption Objection relating to the Cure Amount must state with specificity what cure is required (with appropriate documentation in support thereof). If an Assumption Objection is timely filed, a hearing with respect to the Contract Objection will be held at the Sale Hearing.

(c)     At the conclusion of the Auction (if any), but in no event later than **May 29, 2014 at 11:00 a.m. (prevailing Eastern time)**, the Debtors will file with the Bankruptcy Court notice of Successful Bidder (the "Successful Bidder Notice") setting forth (a) the identity of the Successful Bidder, (b) the identity of the Alternate Bidder (if any), and (c) the list of Contracts that will be assumed and assigned to the Successful Bidder (the "Assumed Contracts"). The filing of the Successful Bidder Notice shall constitute a request by the Debtors for approval at the Sale Hearing of the assumption by the Debtors of the Assumed Contracts and assignment thereof to the Successful Bidder.

(d)     If an Assumption Objection is not received by the Assumption Objection Deadline, the Assumed Contract shall be deemed assumed effective as of the date of the closing of the Sale, the Cure Amount set forth in the Assumption Notice shall be controlling, notwithstanding anything to the contrary in any Contract or any other document, and the non-debtor counterparty to the Assumed Contract shall be forever barred from asserting any other claims against the Debtors or the Successful Bidder (as appropriate), or the property of either of them, as to such Assumed Contract.

(e)     Except as may otherwise be agreed to by the parties to a Contract that is assumed and assigned to the Successful Bidder (with the consent of the Successful Bidder), upon the closing of the Sale, the Successful Bidder shall pay all Cure Amounts in cash. In the event of a dispute regarding the Cure Amount, any payments required, following entry of a final order resolving such dispute, shall be made as soon as practicable thereafter.

(f)    No other or further notice shall be required with respect to the Assumed Contracts.

## E.    Finality of Order

29.    The Debtors further seek, pursuant to Bankruptcy Rules 6004(h) and 6006(d), that the Bankruptcy Court expressly provide that the effectiveness of any order approving of the Sale not be stayed for any period of time after the entry of such order(s).

## F.    Certain "Extraordinary" Provisions that Require Separate Disclosure

30.    The SDNY Sale Guidelines require disclosure of certain "Extraordinary Provisions," pertaining to the conduct of asset sales, which ordinarily will not be approved without good cause shown for such Extraordinary Provisions and reasonable notice.    The proposed sale includes the following Extraordinary Provisions:

(a)    **Deadlines that Effectively Limit Notice**.    Bankruptcy Rule 2002(a)(2) provides that not less than twenty-one (21) days' notice by mail shall be given of a proposed sale of property of the estate other than in the ordinary course of business.    Under the circumstances, the Debtors will be requesting that the Sale Hearing be held on shortened notice on **May 29, 2014 at 2:00 p.m. (prevailing Eastern time)**.

(b)    **Relief from Bankruptcy Rule 6004(h)**.    The proposed Sale Order seeks a waiver of the 14-day stay imposed under Bankruptcy Rule 6004(h). As set forth below, the Debtors submit that such relief is appropriate under the circumstances.

(c)    **Sale Free and Clear**.    As set forth below, the Debtors request that the sale of the Purchased Assets be free and clear of any liens, encumbrances and interests.

## BASIS FOR RELIEF

## A.    The Bidding Procedures Order Should be Entered on the Terms Proposed

### (i)    The Bidding Procedures Are Fair and Appropriate.

31.    The ultimate goal of an auction in a sale pursuant to section 363 of the Bankruptcy Code is to maximize the value realized by the bankruptcy estate.    *See In re Edwards*, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998) ("The purpose of procedural bidding orders is to facilitate an open and fair public sale designed to maximize value for the estate."); *see also In re Food Barn Stores, Inc.*, 107 F.3d 558, 564-65 (8th Cir. 1997).    Bankruptcy courts have discretion

and latitude in structuring a section 363 sale to accomplish this goal. *See Edwards*, 228 B.R. at 561; *In re Wintz Co.*, 219 F.3d 807, 812 (8th Cir. 2000) (stating that in structuring the sale of assets, bankruptcy courts "have ample latitude to strike a satisfactory balance between the relevant factors of fairness, finality, integrity, and maximization of assets").

32.    The Debtors submit that the Bidding Procedures are fair and appropriate under the circumstances, consistent with procedures routinely approved by courts in this district and in the best interest of the Debtors' estates. The Bidding Procedures are designed to facilitate orderly yet competitive bidding to maximize the value realized from the Sale of the Purchased Assets. In particular, the Bidding Procedures contemplate an open and fair auction process with minimum barriers to entry and provide potential bidding parties with sufficient time to perform due diligence and acquire the information necessary to submit a timely and well-informed bid. Accordingly, the Debtors submit that the Bidding Procedures Order should be entered on the terms proposed.

**(ii)    The Form and Manner of the Sale Notice Should be Approved.**

33.    Pursuant to Bankruptcy Rule 2002(a), the Debtors are required to provide their creditors with 21 days' notice of the Sale Hearing. Pursuant to Bankruptcy Rule 2002(c), such notice must include the time and place of the Auction and the Sale Hearing and the deadline for filing any objections to the relief requested herein. Under the circumstances and for the reasons discussed at the hearing held on May 7, 2014 and in the First Day Declaration, the Debtors request that the Sale Hearing be held on shortened notice on **May 29, 2014 at 2:00 p.m. (prevailing Eastern time)**.

34.    The Debtors propose to serve the Sale Notice along with the Bidding Procedures Order and the Bidding Procedures, by either electronic mail or first-class mail, postage prepaid, upon: (i) counsel to North Atlantic SBIC IV, L.P., Nixon Peabody LLP, 100 Summer Street, Boston, Massachusetts 02110, Attn: Rick Pedone, Esq. and David Martland, Esq.; (ii) counsel to Experience Former Stockholders Representative, Latham & Watkins LLP, 355 South Grand Avenue, Los Angeles, California 90071, Attn: Peter M. Gihuly, Esq.; (iii) the

Office of the United States Trustee for the Southern District of New York, Attn: Susan Golden, Esq.; (iv) all entities known to have expressed an interest in a transaction with respect to the Purchased Assets; (v) all entities known to have asserted any lien, claim, interest, or encumbrance in or upon the Purchased Assets; (vi) all federal, state, and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by the Motion; (vii) the United States Attorney's office; (viii) the Securities and Exchange Commission; (ix) the Internal Revenue Service; (x) all known creditors of the Debtors; (xi) counsel to any statutory committee appointed in these Chapter 11 Cases; and (xii) those parties who have filed a notice of appearance and request for service of pleadings in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002.

35.    The Debtors submit that notice of this Motion and the Sale Hearing, coupled with service of the Sale Notice as provided for herein, constitutes good and adequate notice of the Sale and the proceedings with respect thereto in compliance with, and satisfaction of, the applicable requirements of Bankruptcy Rule 2002 and Local Rule 2002-1.  Accordingly, the Debtors request that this Court approve the form and manner of the Sale Notice proposed herein.

### (iii)    The Assumption Procedures Are Appropriate and Should Be Approved.

36.    In connection with the assumption and assignment of the executory contracts and unexpired leases, the Debtors believe it is necessary to establish a process by which the Debtors and counterparties can reconcile cure obligations, if any, in accordance with section 365 of the Bankruptcy Code.

37.    Furthermore, the requirements of Bankruptcy Rule 6006(f) should be modified to permit the Assumption Procedures set forth herein.  The Debtors submit that the Assumption Procedures are fair and reasonable, provide sufficient notice to parties to the Assumed Contracts and provide certainty to all parties in interest regarding their obligations and rights in respect thereof.    Accordingly, the Debtors request that the Court approve the Assumption Procedures.

**B.**     **The Sale Order Should Be Entered on the Terms Proposed**

**(i)**     **The Sale of the Purchased Assets is Authorized by Sections 105, 363 of the Bankruptcy Code as a Sound Exercise of the Debtors' Business Judgment.**

38.     Section 363 of the Bankruptcy Code provides that a debtor-in-possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1).  Although Section 363 does not articulate a standard for authorizing the sale or disposition of a debtor's assets, courts in the Second Circuit have found that the decision to sell assets outside the ordinary course of business should be based upon the sound business judgment of the debtor and, where that judgment has a reasonable basis, a court ordinarily should defer to that judgment in determining whether to approve a proposed transaction.  *See In re Chrysler LLC*, 405 B.R. 84, 95-96 (Bankr. S.D.N.Y. 2009); *see In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992); *Comm. Of Equity Security Holders v. Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *In re Global Crossing Ltd.*, 295 B.R. 726, 742 (Bankr. S.D.N.Y. 2003); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 678-79 (Bankr. S.D.N.Y. 1989); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct.").

39.     As long as a valid business justification exists – as it does under the present circumstances – the decision to sell estate property is entitled to a strong presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interest of the company." *In re Integrated Res., Inc.*, at 656 (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).  This presumption results in courts giving substantial deference to the business decisions of debtors.  *See In re Global Crossing, Ltd.*, 295 B.R. 726, 744 n.58 (Bankr. S.D.N.Y. 2003) ("[T]he Court does not believe that it is appropriate for a bankruptcy court to substitute its own business judgment for that of the [d]ebtors and their advisors, so long as they have satisfied the requirements articulated in the caselaw.")

-18-

40.     As part of this analysis, courts may also consider (a) whether fair and reasonable consideration is provided, (b) whether the transaction has been proposed and negotiated in good faith, and (c) whether reasonable notice has been provided. *See In re Condere*, 228 B.R. 615, 626 (Bankr. S.D. Miss. 1998); *In re Nicole Energy Servs., Inc.*, 385 B.R. 201, 210 (Bankr. S.D. Ohio 2008) (citations omitted); 3 COLLIER ON BANKRUPTCY ¶ 363.02[3] (15th ed. rev. 2009) ("It is now generally accepted that Section 363 allows such sales [of substantial portions of the debtor's assets] in chapter 11, as long as the sale proponent demonstrates a good, sound business justification for conducting the sale before confirmation (other than appeasement of the loudest creditor), that there has been adequate and reasonable notice of the sale, that the sale has been proposed in good faith, and that the purchase price is fair and reasonable.").

41.     A proposed Sale pursuant to the Bidding Procedures satisfies the "sound business judgment" test and presents the best opportunity to realize the maximum value of the Purchased Assets for the benefit of their creditors and other parties in interest.  Furthermore, a sale of the Purchased Assets pursuant to the Sale Agreement will allow the Debtors to reduce their secured debt obligations and other liabilities, all for the benefit of their estates, creditors and parties in interest.

**(ii)     The Sale of the Purchased Assets Should Be Free and Clear of  Liens, Claims and Encumbrances.**

42.     The Debtors request that the sale and transfer of the Purchased Assets be approved free and clear of all liens, claims, encumbrances and other interests, whether arising pre- or post-petition, other than those specifically assumed by the Successful Bidder, with any such liens or interests attaching to the proceeds of the Sale.  The Debtors do not believe that, other than certain *de minimis* liens on certain equipment and furniture and limited liens of North Atlantic and the liens of the Prepetition Secured Parties, the Purchased Assets are subject to any other liens, claims or encumbrances.  Such relief is consistent with the provisions of Section

363(f), which authorizes a debtor to sell assets free and clear of interests in property of an entity

other than the estate if:

> (i)      applicable nonbankruptcy law permits a sale of such property free and clear of such interest;
>
> (ii)     such entity consents;
>
> (iii)    such interest is a lien and the price at which such property is to be sold is greater than the value of all liens on such property;
>
> (iv)    such interest is in *bona fide* dispute; or
>
> (v)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

43.     Because section 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of any one of its five (5) requirements will suffice to permit the sale of the Purchased Assets "free and clear" of interests.  *See, e.g., Michigan Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991); *see also Contrarian Funds, LLC v. Westpoint Stevens, Inc. (In re Westpoint Stevens, Inc.),* 333 B.R. 30, 50 (S.D.N.Y. 2005) ("Where ...a sale is to be free and clear of existing liens and interests other than those of the estate, one or more of the criteria specified in Section 363(f) of the statute must also be met."); *see also Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) ("[Section 363(f)] is written in the disjunctive, not the conjunctive. Therefore, if any of the five conditions of § 363(f) are met, the Trustee has the authority to conduct the sale free and clear of all liens."); *In re Dundee Equity Corp.*, No. 89-B-10233, 1992 WL 53743, at *4 (Bankr. S.D.N.Y. Mar. 6, 1992) ("[S]ection 363(f) is in the disjunctive, such that the sale free of the interest concerned may occur if any one of the conditions of § 363(f) have been met.").

44.     The Court also may authorize the sale of a debtor's assets free and clear of any liens pursuant to Section 105 of the Bankruptcy Code, even if Section 363(f) of the Bankruptcy

Code did not apply.  *See In re Trans World Airlines. Inc.*, No. 01-0056, 2001 WL 1820325, at *3 (Bankr. D. Del. Mar. 27, 2001) ("Bankruptcy courts have long had the authority to authorize the sale of estate assets free and clear even in the absence of § 363(f)."); *see also Volvo White Truck Corp. v. Chambersberg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) ("Authority to conduct such sales [free and clear of liens] is within the court's equitable powers when necessary to carry out the provisions of Title 11.").

45.    The Purchased Assets are subject only to certain *de minimis* liens on certain equipment and furniture and limited liens of North Atlantic.  The Debtors are not aware of any other liens, claims, encumbrances or interests in or upon the Purchased Assets.  If any such lien, claim, encumbrance of interest should exist, the Debtors submit that such each lien, claim, encumbrance or other interest in the Purchased Assets is subject to one or more of the provisions of section 363(f) of the Bankruptcy Code.  For the reasons stated herein, section 363(f) of the Bankruptcy Code authorizes the sale of the Purchased Assets free and clear of all such liens, claims, encumbrances and interest.

**(iii)    The Successful Bidder Should Be Afforded All Protections Under Section 363(m) as a Good Faith Buyer and the Proposed Sale Does Not Violate Section 363(n) of the Bankruptcy Code.**

46.    Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).  While the Bankruptcy Code does not define "good faith," the Seventh Circuit in *In re Andy Frain Services, Inc.* held that:

> The requirement that a purchaser act in good faith ... speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the

> purchaser and other bidders or the trustee, or an attempt to take
> grossly unfair advantage of other bidders.

798 F.2d 1113, 1125 (7th Cir. 1986) (emphasis omitted) (quoting *In re Rock Industries Machinery Corn.*, 572 F.2d 1195, 1198 (7th Cir. 1978) (interpreting Bankruptcy Rule 805, the precursor of section 363(m)).

47.    The Debtors anticipate the Sale to be the culmination of a robust marketing process and the product of negotiations in which the Debtors and all parties will have acted in good faith.  The Debtors submit that the proposed Bidding Procedures are reasonable under the facts and circumstances of this case, especially in light of this extensive marketing process.  The Debtors therefore intend to request that the Bankruptcy Court make a finding that the Successful Bidder has purchased the Purchased Assets in good faith within the meaning of section 363(m) of the Bankruptcy Code.

### (iv)    Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Should Be Authorized Pursuant to Section 365 of the Bankruptcy Code.

48.    The assumption and assignment of the Assumed Contracts is an integral part of the proposed Sale and should be approved by the Bankruptcy Court.  Section 365(a) of the Bankruptcy Code authorizes a debtor in possession to assume and assign an executory contract or unexpired lease subject to Court approval.  Section 365(b) of the Bankruptcy Court requires a debtor in possession to satisfy certain requirements at the time of assumption if a default exists under the contract to be assumed.

49.    Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). By enacting section 365(a) of the Bankruptcy Code, Congress intended to allow a debtor to assume those leases/contracts that benefit the estate, and to reject those that are of no value or are burdensome to the estate. *See Cinicloa v.  Scharffenberger*, 248 F.3d 110, 119 (3d Cir.  2001); *In re Whitcomb & Keller Mortgage Co., Inc.*, 715 F.2d 375, 379 (7th Cir.  1983).

50.    It is well established that decisions to assume or reject executory contracts or unexpired leases are matters within the "business judgment" of the debtor. *See In re G Survivor Corp.*, 171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994) (noting that "[i]n determining whether a debtor may be permitted to reject an executory contract, courts usually apply the business judgment test. Generally, absent a showing of bad faith, or an abuse of discretion, the debtor's business judgment will not be altered") (citations omitted). *See also Sharon Steel Corp. v. National Fuel Gas Dist Corp.*, 872 F.2d 36, 40 (3d Cir. 1989); *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984). Accordingly, courts approve the assumption or rejection of an executory contract or unexpired lease unless evidence is presented that the debtor's decision to assume or reject was "so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice." *In re Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1047 (4th Cir. 1985), cert. denied, 475 U.S. 1057 (1986). Indeed, to impose more exacting scrutiny would slow a debtor's reorganization, thereby increasing its cost and undermining the "Bankruptcy Code's provisions for private control" of the estate's administration. *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

51.    Adequate business justification exists to merit judicial approval of the proposed assumption and assignment of the Assumed Contracts. The Assumed Contracts are valuable assets of the Debtors and the inclusion of such Assumed Contracts will serve to increase the purchase price for the Purchased Assets. Accordingly, the Debtors respectfully request that the Bankruptcy Court approve the assumption and assignment of the Assumed Contracts.

## C.    Relief from the Waiting Periods Under Bankruptcy Rules 6004(h) and 6006(d) is Appropriate

52.    Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Similarly, Bankruptcy Rule 6006(d) provides that "an order authorizing the trustee to assign an executory contract of unexpired lease . . . is stayed until the

expiration of 14 days after the entry of the order, unless the court orders otherwise." The Debtors request that the Sale Order be effective immediately by providing that the fourteen (14) day stay under Bankruptcy Rules 6004(h) and 6006(d) is waived.

53.    The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to appeal before an order can be implemented. *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h) and 6006(d). Although Bankruptcy Rules 6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the stay period, *Collier on Bankruptcy* suggests that the stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 COLLIER ON BANKRUPTCY ¶ 6004.11 (16th rev. ed. 2011). Furthermore, *Collier* suggests that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal. *Id.*

54.    The Debtors request that the Bankruptcy Court waive the fourteen (14) day stay period under Bankruptcy Rules 6004(h) and 6006(d). The Debtor respectfully requests that the orders granting the relief sought in this Motion be effective immediately, and provide that the fourteen-day stay set forth in Bankruptcy Rules 6004(h) and 6006(d) shall not apply, so that the Debtors can promptly consummate the assumption and assignment of the Assumed Contracts and sale of the Purchased Assets without incurring further administrative expenses thereunder.

## **NOTICE**

55.    Notice of this Motion has been given to (i) counsel to North Atlantic SBIC IV, L.P., Nixon Peabody LLP, 100 Summer Street, Boston, Massachusetts 02110, Attn: Rick Pedone, Esq. and David Martland, Esq.; (ii) counsel to Experience Former Stockholders Representative, Latham & Watkins LLP, 355 South Grand Avenue, Los Angeles, California 90071, Attn: Peter M. Gihuly, Esq.; (iii) the Debtors' twenty largest unsecured creditors; (iv) all non-Debtor counterparties to any executory contract or unexpired lease that may be assumed and

assigned to the Successful Bidder; (v) the Office of the United States Trustee for the Southern District of New York, Attn: Susan Golden, Esq.; and (vi) those parties who have filed a notice of appearance and request for service of pleadings in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

WHEREFORE, the Debtors respectfully request the entry of the Bidding Procedures Order, substantially in the form attached hereto as **Exhibit A**, and the Sale Order, substantially in the form attached hereto as **Exhibit B**, granting the relief requested herein and such other and further relief as this Bankruptcy Court deems just and proper.

Dated:  May 9, 2014

Respectfully submitted,

**LOWENSTEIN SANDLER LLP**

/s/ *Sharon L. Levine*
Sharon L. Levine, Esq.
Wojciech F. Jung, Esq.
Nicole Stefanelli, Esq.
Jillian L. Zadie, Esq.
1251 Avenue of the Americas, 17th Floor
New York, New York  10020
(212) 262-6700 (Telephone)
(212) 262-7402 (Facsimile)

-and-

65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

*Proposed Counsel to the Debtors and Debtors-in-Possession*