**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| ConnectEdu, Inc., *et al.*,[1] | Case No. 14-11238 (SCC) |
| | (Jointly Administered) |
| Debtors. | |

**ORDER APPROVING (A) BIDDING PROCEDURES, (B) FORM AND MANNER OF SALE NOTICES, AND (C) SALE HEARING DATE**

Upon the motion, dated May 9, 2014[2] [Docket No. 55&56] (the "Motion"), of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of orders pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (i) approving (a) bidding procedures, (b) form and manner of sale notices, and (c) sale hearing date, and (ii) authorizing and approving (a) the sale of substantially all of their assets free and clear of liens, claims, and encumbrances and (b) assumption and assignment of certain executory contracts and unexpired leases; and upon the record of the dockets in the Chapter 11 Cases; and, sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A. Jurisdiction and Venue. This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue of these cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: (1) ConnectEdu, Inc. (8132) ("ConnectEdu") and its direct subsidiaries: (2) Experience, Inc. (0757) ("Experience"); and (3) Academic Management Systems, Inc. (0844) ("AMS"). The location of the Debtors' corporate headquarters is 600 Atlantic Avenue, 20th Floor, Boston, MA 02210.

[2] Capitalized terms used herein but not defined shall have the meaning ascribed to such terms in the Motion.

B. Statutory Predicates. The statutory and other legal predicates for the relief sought in the Motion are Bankruptcy Code sections 105, 363, 365, 503, 507 and 541, Bankruptcy Rules 2002, 6004, 6006, 7052, 9007, 9008 and 9014, and Local Rules 2002-1, 6004-1, 6006-1 and 9006-1(b).

C. Final Order. This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

D. Notice. As evidenced by the affidavits and/or certificates of service previously filed with the Court and for the reasons discussed at the hearing held on May 7, 2014 and in the First Day Declaration: (1) good and sufficient cause exists to shorten the time period required Bankruptcy Rule 2002 or other rule for notice of hearing on this Motion; (2) proper, timely, adequate and sufficient notice of the Motion and this Order has been provided by the Debtors to all parties entitled to notice in accordance with Bankruptcy Code sections 102(a), 363 and 365 and Bankruptcy Rules 2002, 6004, 6006 and 9007 and (3) such notice, and the form and manner thereof, was good, sufficient and appropriate under the circumstances.

E. Opportunity to Object. A reasonable opportunity to object or be heard with respect to the Motion and this Order has been afforded to all interested persons and entities.

F. Bidding Procedures Are Reasonable and Appropriate. The Debtors have demonstrated good and sufficient reasons for the Court to approve the Motion including, without limitation, approval of the Bidding Procedures, the form and manner of notice of the Motion and the Sale Hearing. The Bidding Procedures (as defined below) are reasonable and appropriate and represent the best method for maximizing the value of the Purchased Assets.

**NOW, THEREFORE, IT IS ORDERED THAT**:

1. Findings of Fact and Conclusions of Law. The findings of fact set forth above and conclusions of law stated herein shall constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding

pursuant to Bankruptcy Rule 9014. To the extent any finding of fact later shall be determined to be a conclusion of law, it shall be so deemed and deemed so ordered, and to the extent any conclusion of law shall be determined to be a finding of fact, it shall be so deemed and deemed so ordered.

A. Notice. As evidenced by the affidavits and/or certificates of service previously filed with the Court, the representations of counsel at the Sale Hearing and for the reasons discussed at the hearing held on May 7 and 16, 2014, and in the First Day Declaration: (1) the time period required Bankruptcy Rule 2002 or other rule for notice of hearing on this Motion is hereby shortened, (2) under the circumstances of the Chapter 11 Cases, proper, timely, adequate and sufficient notice of the Motion and this Order has been provided by the Debtors to all parties entitled to notice in accordance with Bankruptcy Code sections 102(a), 363 and 365 and Bankruptcy Rules 2002, 6004, 6006 and 9007 and (3) such notice, and the form and manner thereof, was good, sufficient and appropriate under the circumstances.

2. Objections. All objections and responses, if any, to the Motion or this Order that have not been withdrawn, waived or settled as announced to the Court or by stipulation filed with the Court or pursuant to the terms of this Order, and all reservations of rights included therein, are hereby overruled on the merits, with prejudice. All persons and entities given notice of the Motion and this Order that failed to timely object thereto are deemed to consent to the relief herein.

3. Bidding Procedures Approved. The bidding procedures attached hereto as Exhibit 1 and incorporated herein by reference (the "Bidding Procedures") are approved and shall govern all proceedings relating to the Auction and any bids for the Purchased Assets in these cases.

4. Assets To Be Sold. The Purchased Assets proposed to be sold are all or substantially all of the Debtors' assets.[3]

---

[3] The Debtors are engaged in negotiations to sell, by separate order, the issued and outstanding capital stock of Debtor AMS and certain assets of Connect held or used in connection with the conduct of

5. As Is, Where Is. The Sale of the Purchased Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by any of the Debtors, their agents, or their estates.

6. Free of Any and All Claims and Interests. The Purchased Assets shall be sold free and clear of all Encumbrances and any Encumbrances shall attach to the net proceeds of the Sale of the Purchased Assets.

7. Participation Requirements.

A. In order for a Bidder to become a "Qualified Bidder," such Bidder must provide, in form and substance satisfactory to the Debtors, in advance of the Bid Deadline (as defined below), the following: (i) an executed confidentiality agreement, substantially in the form attached hereto as Exhibit 2; (ii) certain financial assurances as to such Bidder's ability to close a transaction, and (iii) a preliminary proposal reflecting any Purchased Assets expected to be excluded and the purchase price range.

B. Each of the Prepetition Secured Parties shall automatically be deemed to be a Qualified Bidder without the need to comply with any of the foregoing requirements and shall be entitled to credit bid on the assets which they have a lien.

8. Due Diligence.

A. The Debtors will coordinate the diligence process and provide due diligence access and information as reasonably requested by any Bidder executing a confidentiality agreement.

B. It is expected that Bidders will complete all due diligence in connection with the Purchased Assets and the Auction prior to the Bid Deadline and, in any event, without the written consent of the Debtors, no Bid may be subject to any closing condition relating to completion of additional due diligence.

---

AMS' business (the "AMS Assets") to North Atlantic. To the extent the Debtors enter into and close on the sale of the AMS Assets to North Atlantic, such assets shall not be subject to a sale under this Order.

9. Bid Deadline. Bids shall be due no later than **May 23, 2014 at 3:00 p.m. (prevailing Eastern time)** (the "Bid Deadline"). All Bids must be submitted by e-mail and Federal Express on or before the Bid Deadline to (i) the Debtors' Chief Restructuring Officer, Mark D. Podgainy, Getzler Henrich & Associates LLC, 295 Madison Avenue, 20th Floor, New York, NY 10017, mpodgainy@getzlerhenrich.com and (ii) counsel to the Debtors, Lowenstein Sandler LLP, 65 Livingston Avenue, Roseland, New Jersey 07068, Attention: Sharon L. Levine, Esq. slevine@lowenstein.com, Wojciech F. Jung, Esq. wjung@lowenstein.com, Nicole Stefanelli, Esq. nstefanelli@lowenstein.com and (iii) counsel to North Atlantic, Richard C. Pedone, Esq. rpedone@nixonpeabody.com.

10. Qualified Bid Requirements.

A. All Bids must be in writing acceptable to the Debtors and include the following: (i) a binding, executed, definitive agreement, substantially in the form attached as Exhibit 3 to the Bidding Procedures Order and marked to show the amendments and modifications thereto, offering minimum cash consideration of (x) $200,000 for one Contract or (y) $500,000 for assets including more than one Contract, plus (z) the assumption of all Cure Amounts (as defined below); (ii) confirmation that the Bidder's offer is irrevocable until immediately following the closing of the Sale; (iii) a good faith deposit (the "Good Faith Deposit") equal to ten percent (10%) of the bid amount; (iv) evidence of a binding commitment for financing, available cash, undrawn lines of credit, or other ability to obtain the funds necessary to consummate the proposed transaction; (v) a commitment to consummate the purchase of the Purchased Assets within not more than five (5) days after entry of the Sale Order by the Bankruptcy Court, and (vi) evidence of corporate authority to enter into such transaction (such a Bid, a "Qualified Bid"). A Qualified Bid must not contain any conditions to closing other than Bankruptcy Court approval. The Debtors shall have the right to deem a Bid a Qualified Bid even if such Bid does not conform to one or more of the aforementioned requirements. North Atlantic may submit its bid by no later than 4:00 p.m. the day prior to the Auction.

B. Each Qualified Bidder, by submitting a Bid, shall be deemed to acknowledge and agree that it (i) is not relying upon any written or oral statements, representations, promises, warranties or guarantees of any kind whether expressed or implied, by operation of law or otherwise, made by any person or party including the Debtors and their respective agents and representatives, regarding the Purchased Assets, the Bidding Procedures or any information provided in connection therewith and (ii) consents to the jurisdiction of the Bankruptcy Court.

C. Nothing herein shall alter the rights of any Prepetition Secured Party under section 363(k) of the Bankruptcy Code and, for purposes of the Auction, North Atlantic shall be deemed to hold an allowed claim in the amount of its then outstanding debt under the Debentures.

11. Designation of Stalking Horse Bidder.

A. The Debtors reserve the right to agree to a minimum purchase price with a proposed purchaser (the "Stalking Horse Bidder") who subsequently agrees to have its Qualified Bid serve as a "stalking horse" Bid at the Auction (the "Stalking Horse Bid").

B. The Debtors shall file notice of any Stalking Horse Bid and serve it on (i) counsel for any statutory committee and (ii) the Office of the United States Trustee within one (1) business day of the designation of such Stalking Horse Bid.

12. No Auction Required. If no Qualified Bids are submitted by the Bid Deadline, the Debtors shall not conduct an Auction. If only one Qualified Bid is submitted by the Bid Deadline, the Debtors shall not conduct the Auction and shall promptly seek Bankruptcy Court approval to enter into and consummate such transaction.

13. Auction Required.

A. If more than one Qualified Bid is submitted by the Bid Deadline, the Debtors shall conduct an Auction **on May 27, 2014 at 9:30 a.m. (prevailing Eastern time)** at the offices of Lowenstein Sandler LLP, 1251 Avenue of the Americas, New York, New York, in accordance with the following procedures: (i) attendance at the Auction will be limited to the

Debtors, each Qualified Bidder that has timely submitted a Qualified Bid, any other party with a security interest in property owned or leased by the Debtors (including any prepetition lenders), any representative of any statutory committee, and the advisers to each of the foregoing, and only Qualified Bidders will be entitled to make any subsequent Qualified Bids at the Auction; (ii) by 8:00 p.m. (prevailing Eastern time) on the day before the Auction, the Debtors will (a) notify each Qualified Bidder that has timely submitted a Qualified Bid that its Bid is a Qualified Bid and (b) will provide such Qualified Bidders with copies of the Qualified Bid that the Debtors believe is the highest or otherwise best offer for the Purchased Assets (the "Baseline Bid"), (iii) all Qualified Bidders that have timely submitted a Qualified Bid will be entitled to be present for all bidding at the Auction, and (iv) bidding at the Auction will begin with the Baseline Bid, continue in minimum increments of at least $100,000 (the "Minimum Overbid Increment"), and conclude after each participating Bidder has had the opportunity to submit one or more additional Bids.

B. The Debtors may conduct the Auction, and adopt additional rules with respect thereto, in the manner the Debtors determine in their reasonable discretion will result in the highest and best Bids for the Purchased Assets.

14. Selection of Successful Bid. After the conclusion of the Auction, the Debtors after consultation with North Atlantic shall select the highest or otherwise best Qualified Bid (or Bids), after taking into account such factors as the price of such bids, the form and structure of the bids and any tax considerations, and shall promptly seek Bankruptcy Court approval to enter into and consummate such transaction(s) (a "Successful Bid") and the Bidder making such Bid (the "Successful Bidder").

15. Sale Hearing. A hearing to consider approval of the Sale (the "Sale Hearing") will be held on **May 29, 2014 at 2:00 p.m. (prevailing Eastern time)**, or if the Auction has not been held by such date, on the second business day following the Auction or as soon thereafter as the Bankruptcy Court's calendar will permit, before the Honorable Shelley C. Chapman, U.S.B.J., United States Bankruptcy Court for the Southern District of New York, One

Bowling Green, New York, NY 10004, at which time the Bankruptcy Court shall consider the Motion and the Successful Bid, and confirm the results of the Auction, if any. The Sale Hearing may be adjourned or rescheduled without notice other than by an announcement of the adjourned date at the Sale Hearing. If the Debtors receive more than one Qualified Bid, then, at the Sale Hearing, the Debtors shall seek approval of the Successful Bid, and may also seek approval of the second highest or best Qualified Bid (the "Alternate Bid" and such Bidder, the "Alternate Bidder"). The Debtors will not be bound by a Successful Bid or Alternate Bid unless and until such Bid shall have been approved by the Bankruptcy Court pursuant to an unstayed order. Following approval of the Sale to the Successful Bidder, if the Successful Bidder fails to consummate the Sale for any reason, then the Alternate Bid will be deemed to be the Successful Bid and the Debtors will effectuate a Sale to the Alternate Bidder without further order of the Bankruptcy Court, and the Debtors and any other person may pursue any and all remedies available under law against the Successful Bidder in connection with its failure to consummate such Sale.

16. Return of Good Faith Deposits. Good Faith Deposits of all Successful Bidders and Alternate Bidders shall be held in an interest-bearing escrow account by counsel for the Debtors and the Alternate Bids shall remain open and not returned (notwithstanding Bankruptcy Court approval of a Sale pursuant to the terms of one or more Successful Bids), until two business days following the closing (the "Deposit Return Date") of the Sale to the Successful Bidder. The Good Faith Deposits of all other Qualified Bidders will be returned within 48 hours of the Auction. The Good Faith Deposit(s) submitted by the Successful Bidder, together with interest thereon, shall be applied against the payment of the cash portion of the purchase price upon closing of the Sale to the Successful Bidder. In the event a Bidder fails to close through its own default, its Good Faith Deposit shall be released to the Debtors. On the Deposit Return Date, the Debtors will return the Good Faith Deposits of all other Successful Bidders and Alternative Bidders with accrued interest.

17. Reservation of Rights. Notwithstanding anything to the contrary herein, the Debtors reserve the right, in their business judgment, to modify the Bidding Procedures at any time after consultation with North Atlantic, with notice to Bidders and potential Bidders, including, without limitation, to (i) accept Bids for less than all or substantially all of their assets, (ii) to adjourn the Auction, the Sale Hearing or any of the dates set forth herein one or more times for any reason, (iii) increase or decrease the Minimum Overbid Increment, (iv) terminate the Bidding Procedures at any time to pursue confirmation of a Plan or an alternative restructuring strategy that maximizes value for the Debtors' estates, (v) determine which Qualified Bid, if any, is the Successful Bid and the Alternate Bid, (vi) reject at any time, any bid that is: (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of the Sale, or (c) contrary to the best interests of the Debtors, the Debtors' estates and creditors, or (vii) accept as a Qualified Bidder or Qualified Bid a Bidder or Bid that does not otherwise meet the requirements set forth in the Bidding Procedures.

18. Notice of Sale. Notice of the Motion and the Sale Hearing shall be good and sufficient, and no other or further notice shall be required, if given as follows:

A. Within three (3) days after entry of this Order (the "Mailing Date"), notice of the Sale substantially in the form attached hereto as Exhibit 4 (the "Sale Notice"), along with this Order and the Bidding Procedures, shall be served by either electronic mail or first-class mail, postage prepaid, upon: (i) counsel to North Atlantic SBIC IV, L.P., Nixon Peabody LLP, 100 Summer Street, Boston, Massachusetts 02110, Attn: Rick Pedone, Esq. and David Martland, Esq.; (ii) counsel to Experience Former Stockholders Representative, Latham & Watkins LLP, 355 South Grand Avenue, Los Angeles, California 90071, Attn: Peter M. Gihuly, Esq.; (iii) the Office of the United States Trustee for the Southern District of New York, Attn: Susan Golden, Esq.; (iv) all entities known to have expressed an interest in a transaction with respect to the Purchased Assets; (v) all entities known to have asserted any lien, claim, interest, or encumbrance in or upon the Purchased Assets; (vi) all federal, state, and local regulatory or

taxing authorities or recording offices which have a reasonably known interest in the relief requested by the Motion; (vii) the United States Attorney's office; (viii) the Securities and Exchange Commission; (ix) the Internal Revenue Service; (x) all known creditors of the Debtors; (xi) counsel to any statutory committee appointed in these Chapter 11 Cases; and (xii) those parties who have filed a notice of appearance and request for service of pleadings in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002.

B. The Debtors request that if any party objects to the relief requested in the Motion, that such party be required to file an objection (the "Sale Objection") on or before **May 28, 2014 at 11:00 a.m. (prevailing Eastern time)** (the "Sale Objection Deadline") and serve a copy of the Sale Objection, so as to be actually received by the Sale Objection Deadline, upon (i) the Debtors' Chief Restructuring Officer, Mark D. Podgainy, Getzler Henrich & Associates LLC, 295 Madison Avenue, 20th Floor, New York, NY 10017, mpodgainy@getzlerhenrich.com; (ii) counsel to the Debtors, Lowenstein Sandler LLP, 65 Livingston Avenue, Roseland, New Jersey 07068, Attention: Sharon L. Levine, Esq. slevine@lowenstein.com, Wojciech F. Jung, Esq. wjung@lowenstein.com and Nicole Stefanelli, Esq. nstefanelli@lowenstein.com; (iii) counsel to any statutory committee; (iv) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Room 1006, New York, NY 10014, Attn: Susan Golden, Esq., and (v) counsel to North Atlantic, Richard C. Pedone, Esq. rpedone@nixonpeabody.com.

C. The failure of any objecting person or entity to timely file its objection by the Sale Objection Deadline shall be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Motion, the Sale, or the Debtors' consummation and performance of the Sale and any agreements related to the Sale, if authorized by the Court, except with respect to any objection relating solely to facts or circumstances that came into existence following the Sale Objection Deadline.

D. The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open

court or on the Court's calendar on the date scheduled for the Sale Hearing or any adjourned date.

19. Assumption Procedures. The following procedures (the "Assumption Procedures") for the assumption and assignment of the certain executory contracts and leases are hereby approved:

A. Within three (3) days after entry of this Order, the Debtors shall serve on all non-debtor counterparties to any executory contract or unexpired lease that may be assumed and assigned to the Successful Bidder, a notice substantially in the form attached as Exhibit 5 to this Order (the "Assumption Notice"), that identifies (i) the contract, (ii) the name of the non-debtor counterparty to such contract and (iii) the undisputed cure amount that must be paid to provide the counterparty with all amounts that are payable to the counterparty upon assumption and assignment of the contract or lease as required by section 365 of the Bankruptcy Code (the "Cure Amount"), in the event such contract or lease is ultimately assumed by the Successful Bidder.

B. Objections, if any, to the proposed assumption and assignment of a contract or unexpired lease, including, but not limited to, objections relating to the Cure Amount (each, an "Assumption Objection"), must be filed on or before **May 27, 2014 at 9:30 a.m. (prevailing Eastern time)** (the "Assumption Objection Deadline") and served, so as to be actually received by the Assumption Objection Deadline, upon: (i) the Debtors' Chief Restructuring Officer, Mark D. Podgainy, Getzler Henrich & Associates LLC, 295 Madison Avenue, 20th Floor, New York, NY 10017, mpodgainy@getzlerhenrich.com; (ii) counsel to the Debtors, Lowenstein Sandler LLP, 65 Livingston Avenue, Roseland, New Jersey 07068, Attention: Sharon L. Levine, Esq. slevine@lowenstein.com, Wojciech F. Jung, Esq. wjung@lowenstein.com and Nicole Stefanelli, Esq. nstefanelli@lowenstein.com; (iii) counsel to any statutory committee; (iv) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Room 1006, New York, NY 10014, Attn: Susan Golden, Esq., and (v) counsel to North Atlantic, Richard C. Pedone, Esq.

rpedone@nixonpeabody.com. Any Assumption Objection relating to the Cure Amount must state with specificity what cure is required (with appropriate documentation in support thereof). Notwithstanding the Assumption Objection Deadline, counterparties to contracts and leases subject to assumption and assignment may file and serve their objections related solely to the issue of adequate assurance of future performance (the "Adequate Assurance Objection") no later than **thirty minutes prior to the Sale Hearing**. If an Assumption Objection or an Adequate Assurance Objection is timely filed, a hearing with respect to the Assumption and/or Adequate Assurance Objection will be held at the Sale Hearing.

C. At the conclusion of the Auction (if any), but in no event later than **May 29, 2014 at 11:00 a.m. (prevailing Eastern time)**, the Debtors will file with the Bankruptcy Court a Notice of Successful Bidder (the "Successful Bidder Notice") setting forth (a) the identity of the Successful Bidder, (b) the identity of the Alternate Bidder (if any), and (c) the list of Contracts that will be assumed and assigned to the Successful Bidder (the "Assumed Contracts"). The filing of the Successful Bidder Notice shall constitute a request by the Debtors for approval at the Sale Hearing of the assumption by the Debtors of the Assumed Contracts and assignment thereof to the Successful Bidder.

D. If an Assumption Objection is not received by the Assumption Objection Deadline, the Assumed Contract shall be deemed assumed effective as of the date of the closing of the Sale, the Cure Amount set forth in the Assumption Notice shall be controlling, notwithstanding anything to the contrary in any Contract or any other document, and the non-debtor counterparty to the Assumed Contract shall be forever barred from asserting any other claims against the Debtors or the Successful Bidder (as appropriate), or the property of either of them, as to such Assumed Contract.

E. Except as may otherwise be agreed to by the parties to a Contract that is assumed and assigned to the Successful Bidder (with the consent of the Successful Bidder), upon the closing of the Sale, the Successful Bidder shall pay all undisputed Cure Amounts in cash. In the event of a dispute regarding the Cure Amount, the disputed portion requested by the

counterparty shall be deposited with counsel to the Debtors pending (i) entry of a final nonappealable order resolving such dispute or (ii) agreement of the parties and joint instructions to counsel to the Debtors.

F. No other or further notice shall be required with respect to the Assumed Contracts.

20. Order Immediately Enforceable. Notwithstanding the provisions of Bankruptcy Rules 6004 and 6006 or any applicable provisions of the Local Rules, this Order shall not be stayed for fourteen (14) days after the entry hereof, but shall be effective and enforceable immediately upon entry.

21. Retention of Jurisdiction. This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order. If there is any discrepancy between the Motion, the Bidding Procedures, and/or this Order, this Order shall control.

Dated: May 16, 2014
New York, New York

*/s/ Shelley C. Chapman*
HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE

**Exhibit 1**
**Bidding Procedures**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>ConnectEdu, Inc., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 14-11238 (SCC)<br><br>(Jointly Administered) |

**BIDDING PROCEDURES**

The bidding procedures (the "Bidding Procedures") set forth below shall be employed with respect to the proposed sale (the "Sale") of all or substantially all of the property (the "Purchased Assets") of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") subject to competitive bidding as set forth herein and approval of the Sale by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") pursuant to sections 105(a), 363 and 365 and Fed. R. Bankr. P. 2002, 6004, 6006 and 9014 of title 11 of the United States Code (the "Bankruptcy Code").

On May 9, 2014, the Debtors filed with the Bankruptcy Court their motion (the "Motion") for entry of orders pursuant to sections 105(a), 363 and 365 of title 11 of the Bankruptcy Code and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (i) approving (a) bidding procedures, (b) form and manner of sale notices, and (c) sale hearing date, and (ii) authorizing and approving (a) the sale of substantially all of their assets free and clear of liens, claims, and encumbrances and (b) assumption and assignment of certain executory contracts and unexpired leases

On May 16, 2014, the Bankruptcy Court entered the *Order Approving (A) Bidding Procedures, (B) Form and Manner of Sale Notices, and (C) Sale Hearing Date* (the "Bidding

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: (1) ConnectEdu, Inc. (8132) ("ConnectEdu") and its direct subsidiaries: (2) Experience, Inc. (0757) ("Experience"); and (3) Academic Management Systems, Inc. (0844) ("AMS"). The location of the Debtors' corporate headquarters is 600 Atlantic Avenue, 20th Floor, Boston, MA 02210.

Procedures Order").[2] The Bidding Procedures Order set **May 29, 2014 at 2:00 p.m. (prevailing Eastern time)** as the date the Bankruptcy Court will conduct a hearing (the "Sale Hearing"), subject to adjournment as set forth below and in the Bidding Procedures Order, to authorize the Debtors to sell the Purchased Assets to the Successful Bidder.

The Bidding Procedures set forth herein describe, among other things, the Purchased Assets available for sale, the manner in which bidders and bids become Qualified Bidders and Qualified Bids, respectively (each, as defined herein), the coordination of diligence efforts among bidders, the receipt and negotiation of bids received, the conduct of any subsequent auction (the "Auction"), the ultimate selection of the Successful Bidder(s) (as defined herein) and the Bankruptcy Court's approval thereof.

The proposed Bidding Procedures provide for the solicitation by the Debtors of proposals or offers (each, a "Bid") by any potential bidder (each, a "Bidder"), pursuant to the following terms and conditions:

**Assets To Be Sold**

The Purchased Assets[3] proposed to be sold are all or substantially all of the Debtors' assets.

**As Is, Where Is**

The Sale of the Purchased Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by any of the Debtors, their agents, or their estates.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Bidding Procedures Order.

[3] The Debtors are engaged in negotiations to sell, by separate order, the issued and outstanding capital stock of Debtor AMS and certain assets of Connect held or used in connection with the conduct of AMS' business (the "AMS Assets") to North Atlantic. To the extent the Debtors enter into and close on the sale of the AMS Assets to North Atlantic, such assets shall not be subject to a sale under this Order.

**Free of Any and All Claims and Interests**

The Purchased Assets shall be sold free and clear of all Encumbrances and any Encumbrances shall attach to the net proceeds of the Sale of the Purchased Assets.

**Participation Requirements**

To ensure that only Bidders with a serious interest in the purchase of the Purchased Assets participate, the Bidding Procedures provide for certain minimal requirements for a Bidder to become a "Qualified Bidder." These requirements include that the Bidder must provide, in form and substance satisfactory to the Debtors, in advance of the Bid Deadline (as defined below), the following: (i) an executed confidentiality agreement, substantially in the form attached as Exhibit 2 to the Bidding Procedures Order; (ii) certain financial assurances as to such Bidder's ability to close a transaction, and (iii) a preliminary proposal reflecting any Purchased Assets expected to be excluded and the purchase price range. Each of the Prepetition Secured Parties shall automatically be deemed to be a Qualified Bidder without the need to comply with any of the foregoing requirements.

**Due Diligence**

The Bidding Procedures permit each Bidder (before or after becoming a Qualified Bidder) an opportunity to participate in the diligence process after executing and delivering executed confidentiality agreement, substantially in the form attached as Exhibit 2 to the Bidding Procedures Order. The Debtors will coordinate the diligence process and provide due diligence access and information as reasonably requested by any Bidder executing a confidentiality agreement. It is expected that Bidders will complete all due diligence in connection with the Purchased Assets and the Auction prior to the Bid Deadline and, in any event, without the written consent of the Debtors, no Bid may be subject to any closing condition relating to completion of additional due diligence.

**Bid Deadline**

The Bidding Procedures provide that Bids shall be due no later than **May 23, 2014 at 3:00 p.m. (prevailing Eastern time)** (the "Bid Deadline"). All Bids must be submitted

by e-mail and Federal Express on or before the Bid Deadline to (i) the Debtors' Chief Restructuring Officer, Mark D. Podgainy, Getzler Henrich & Associates LLC, 295 Madison Avenue, 20th Floor, New York, NY 10017, mpodgainy@getzlerhenrich.com, (ii) counsel to the Debtors, Lowenstein Sandler LLP, 65 Livingston Avenue, Roseland, New Jersey 07068, Attention: Sharon L. Levine, Esq. slevine@lowenstein.com, Wojciech F. Jung, Esq. wjung@lowenstein.com and Nicole Stefanelli, Esq. nstefanelli@lowenstein.com and (iii) counsel to North Atlantic, Richard C. Pedone, Esq. rpedone@nixonpeabody.com.

**Qualified Bid Requirements**

All Bids must be in writing acceptable to the Debtors and include the following: (i) a binding, executed, definitive agreement, substantially in the form attached as Exhibit 3 to the Bidding Procedures Order and marked to show the amendments and modifications thereto, offering minimum cash consideration of (x) $200,000 for one Contract or (y) $500,000 for assets including more than one Contract, plus (z) the assumption of all Cure Amounts (as defined below); (ii) confirmation that the Bidder's offer is irrevocable until immediately following the closing of the Sale; (iii) a good faith deposit (the "Good Faith Deposit") equal to ten percent (10%) of the bid amount; (iv) evidence of a binding commitment for financing, available cash, undrawn lines of credit, or other ability to obtain the funds necessary to consummate the proposed transaction; (v) a commitment to consummate the purchase of the Purchased Assets within not more than five (5) days after entry of the Sale Order by the Bankruptcy Court, and (vi) evidence of corporate authority to enter into such transaction (such a Bid, a "Qualified Bid"). A Qualified Bid must not contain any conditions to closing other than Bankruptcy Court approval. The Debtors shall have the right to deem a Bid a Qualified Bid even if such Bid does not conform to one or more of the aforementioned requirements.

Each Qualified Bidder, by submitting a Bid, shall be deemed to acknowledge and agree that it (i) is not relying upon any written or oral statements, representations, promises, warranties or guarantees of any kind whether expressed or implied, by operation of law or otherwise, made by any person or party including the Debtors and their respective agents and

representatives, regarding the Purchased Assets, the Bidding Procedures or any information provided in connection therewith and (ii) consents to the jurisdiction of the Bankruptcy Court.

Nothing herein shall alter the rights of any Prepetition Secured Party under section 363(k) of the Bankruptcy Code.

**Designation of Stalking Horse Bidder**

Pursuant to the Bidding Procedures Order, the Debtors reserve the right to agree to a minimum purchase price with a proposed purchaser (the "Stalking Horse Bidder") who subsequently agrees to have its Qualified Bid serve as a "stalking horse" Bid at the Auction (the "Stalking Horse Bid"). The Debtors shall file notice of any Stalking Horse Bid and serve it on (i) counsel for any statutory committee and (ii) the Office of the United States Trustee within one (1) business day of the designation of such Stalking Horse Bid.

**No Auction Required**

If no Qualified Bids are submitted by the Bid Deadline, the Debtors shall not conduct an Auction. If only one Qualified Bid is submitted by the Bid Deadline, the Debtors shall not conduct the Auction and shall promptly seek Bankruptcy Court approval to enter into and consummate such transaction.

**Auction Required**

If more than one Qualified Bid is submitted by the Bid Deadline, the Debtors shall conduct an Auction **on May 27, 2014 at 9:30 a.m. (prevailing Eastern time)** at the offices of Lowenstein Sandler LLP, 1251 Avenue of the Americas, New York, New York, in accordance with the following procedures: (i) attendance at the Auction will be limited to the Debtors, each Qualified Bidder that has timely submitted a Qualified Bid, any other party with a security interest in property owned or leased by the Debtors (including any prepetition lenders), any representative of any statutory committee, and the advisers to each of the foregoing, and only Qualified Bidders will be entitled to make any subsequent Qualified Bids at the Auction; (ii) by 8:00 p.m. (prevailing Eastern time) on the day before the Auction, the Debtors will (a) notify each Qualified Bidder that has timely submitted a Qualified Bid that its Bid is a Qualified Bid

and (b) will provide such Qualified Bidders with copies of the Qualified Bid that the Debtors believe is the highest or otherwise best offer for the Purchased Assets (the "Baseline Bid"), (iii) all Qualified Bidders that have timely submitted a Qualified Bid will be entitled to be present for all bidding at the Auction, and (iv) bidding at the Auction will begin with the Baseline Bid, continue in minimum increments of at least $100,000 (the "Minimum Overbid Increment"), and conclude after each participating Bidder has had the opportunity to submit one or more additional Bids.

The Debtors may conduct the Auction, and adopt additional rules with respect thereto, in the manner the Debtors determine in their reasonable discretion will result in the highest and best Bids for the Purchased Assets.

**Selection of Successful Bid**

After the conclusion of the Auction, Pursuant to the Bidding Procedures Order, the Debtors shall select the highest or otherwise best Qualified Bid (or Bids), after taking into account such factors as the price of such bids, the form and structure of the bids and any tax considerations, and shall promptly seek Bankruptcy Court approval to enter into and consummate such transaction(s) (a "Successful Bid") and the Bidder making such Bid (the "Successful Bidder").

**Sale Hearing**

The Debtors seek to have a hearing to consider approval of the Sale (the "Sale Hearing") on **May 29, 2014 at 2:00 p.m. (prevailing Eastern time)**, or if the Auction has not been held by such date, on the second business day following the Auction or as soon thereafter as the Bankruptcy Court's calendar will permit, before the Honorable Shelley C. Chapman, U.S.B.J., United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, NY 10004, at which time the Bankruptcy Court shall consider the Motion and the Successful Bid, and confirm the results of the Auction, if any. The Sale Hearing may be adjourned or rescheduled without notice other than by an announcement of the adjourned date at the Sale Hearing. If the Debtors receive more than one Qualified Bid, then, at the Sale Hearing,

the Debtors shall seek approval of the Successful Bid, and may also seek approval of the second highest or best Qualified Bid (the "Alternate Bid" and such Bidder, the "Alternate Bidder"). The Debtors will not be bound by a Successful Bid or Alternate Bid unless and until such Bid shall have been approved by the Bankruptcy Court pursuant to an unstayed order. Following approval of the Sale to the Successful Bidder, if the Successful Bidder fails to consummate the Sale for any reason, then the Alternate Bid will be deemed to be the Successful Bid and the Debtors will effectuate a Sale to the Alternate Bidder without further order of the Bankruptcy Court, and the Debtors and any other person may pursue any and all remedies available under law against the Successful Bidder in connection with its failure to consummate such Sale.

**Return of Good Faith Deposits**

Good Faith Deposits of all Successful Bidders and Alternate Bidders shall be held in an interest-bearing escrow account by counsel for the Debtors and the Alternate Bids shall remain open and not returned (notwithstanding Bankruptcy Court approval of a Sale pursuant to the terms of one or more Successful Bids), until two business days following the closing (the "Deposit Return Date") of the Sale to the Successful Bidder. The Good Faith Deposits of all other Qualified Bidders will be returned within 48 hours of the Auction. The Good Faith Deposit(s) submitted by the Successful Bidder, together with interest thereon, shall be applied against the payment of the cash portion of the purchase price upon closing of the Sale to the Successful Bidder. In the event a Bidder fails to close through its own default, its Good Faith Deposit shall be released to the Debtors. On the Deposit Return Date, the Debtors will return the Good Faith Deposits of all other Successful Bidders and Alternative Bidders with accrued interest.

**Reservation of Rights**

Notwithstanding anything to the contrary herein, pursuant to the Bidding Procedures Order, the Debtors reserve the right, in their business judgment, to modify the Bidding Procedures at any time, with notice to Bidders and potential Bidders, including, without limitation, to (i) accept Bids for less than all or substantially all of their assets, (ii) to adjourn the

Auction, the Sale Hearing or any of the dates set forth herein one or more times for any reason, (iii) increase or decrease the Minimum Overbid Increment, (iv) terminate the Bidding Procedures at any time to pursue confirmation of a Plan or an alternative restructuring strategy that maximizes value for the Debtors' estates, (v) determine which Qualified Bid, if any, is the Successful Bid and the Alternate Bid, (vi) reject at any time, any bid that is: (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of the Sale, or (c) contrary to the best interests of the Debtors, the Debtors' estates and creditors, or (vii) accept as a Qualified Bidder or Qualified Bid a Bidder or Bid that does not otherwise meet the requirements set forth in the Bidding Procedures.

**Exhibit 2**

**Form of Confidentiality Agreement**

# CONFIDENTIALITY AGREEMENT

May __, 2014

The undersigned desires to explore the possibility of acquiring (the "Potential Transaction") substantially all of the assets of ConnectEdu, Inc. and its direct subsidiaries, Experience, Inc. and Academic Management Systems, Inc. (collectively, the "Sellers"). In connection with the Potential Transaction, the Sellers and/or their advisors (the "Advisors"), acting on behalf of the Sellers, have and will furnish to the undersigned certain information and materials relating to the Sellers, their respective businesses, operations, plans, projections, forecasts, technology, intellectual property and ownership, and the Potential Transaction (collectively, the "Evaluation Material").

**Section 1.** Evaluation Material.

(a) The term "Evaluation Material" as used herein shall mean all information, documents, agreements, statements, compilations, reports, analyses, customer lists, supplier lists, arrangements with suppliers and business partners, summaries and other items, whether or not prepared or generated in connection with the Potential Transaction or otherwise, relating in any way to the business, financial condition, ownership and operations of the Sellers, or to the Potential Transaction, whether furnished or obtained before or after the date of this Confidentiality Agreement, and whether tangible or intangible, and in whatever form or medium provided, and whether marked, labeled or identified as "confidential" or the equivalent, as well as any of the foregoing that is generated, created or assembled by the undersigned, the Sellers, any of their affiliates, or the Advisors or by any of their respective Representatives (as defined below), that contains, reflects or is derived from the Evaluation Material.

(b) Nothing contained herein shall in any way restrict or impair the undersigned's right to use, disclose or otherwise deal with: (i) Evaluation Material which at the time of its disclosure is, or which thereafter becomes through no fault of the undersigned or its Representatives, part of the readily available public domain by publication or otherwise; and (ii) Evaluation Material which the undersigned can show was in its possession, or the possession of one or more of the undersigned's Representatives, at the time of disclosure, and was not acquired, directly or indirectly, from any party under any secrecy obligation to the Sellers, their affiliates, their respective Representatives or any other party. Notwithstanding anything herein to the contrary, if the undersigned or any of its Representatives is requested or required (by oral questions, interrogatories, requests for information or documents, subpoena, civil investigative demand or any informal or formal investigation, in each case by any government or governmental agency or authority) to disclose any Evaluation Material or any other information relating to the Sellers or any of their affiliates, or to the Potential Transaction, then the undersigned shall provide the Sellers and the Advisors with prompt written notice of any such request or requirement (including the terms of, and circumstances surrounding, such request) so that the Sellers may seek an appropriate protective order or other appropriate remedy and/or waive compliance with the provisions of this Confidentiality Agreement and the undersigned shall reasonably cooperate with the Sellers in this regard. If such order or other remedy is not obtained, or the Sellers waive in writing compliance with the provisions hereof, the undersigned or such Representatives subject to such request will disclose only that portion of the Evaluation Material which it is advised by counsel, in writing, that it is legally required to disclose and the undersigned will exercise reasonable efforts to obtain reliable assurance that confidential treatment will be accorded the Evaluation Material so disclosed.

(c) The undersigned agrees that it shall deliver to the Sellers, and shall cause its Representatives to deliver to the Sellers, at the conclusion of the undersigned's review of the Evaluation Material, or within three (3) business days after a request by the Sellers, which request may be made at any time and for any reason or no reason, (x) all Evaluation Material (and all copies thereof) in any form

whatsoever, and (y) all reports, memoranda or other materials prepared by or for the undersigned or its Representatives (and all copies thereof) based on Evaluation Materials. The undersigned may in lieu of delivery cause the materials described in clauses (x) and (y) to be destroyed by its Representatives. Any such destruction shall be confirmed in writing to the Sellers by the undersigned. The undersigned, at the request of the Sellers or any of the Advisors, shall provide a written confirmation, that it has fully complied with the obligations of this Section 1(c). Such delivery shall not relieve the undersigned or its Representatives from their respective obligations under this Confidentiality Agreement.

**Section 2.** Permitted Use.

(a) In consideration of the delivery of Evaluation Material contemplated by this Confidentiality Agreement, the undersigned agrees that it will keep the Evaluation Material confidential and that the Evaluation Material will not, without the prior written consent of the Sellers, be disclosed by the undersigned or by its officers, directors, partners, employees or legal or accounting advisors (each of the foregoing, a "Representative" and collectively, the "Representatives") in any manner whatsoever, in whole or in part, other than as expressly set forth in this Confidentiality Agreement. Representatives shall not include any of the undersigned's financial advisors or institutional lenders or other financing sources, in each case, without the prior written consent of the Sellers.

(b) The undersigned agrees that the Evaluation Material shall be used by it and its Representatives solely for the purpose of evaluating the Potential Transaction and determining the undersigned's interest in entering into the Potential Transaction and shall not be used by the undersigned for any other purpose, including, without limitation, in any manner that is, directly or indirectly, detrimental to, or competitive with, the businesses or interests of the Sellers, or that is otherwise for the undersigned's benefit. Moreover, the undersigned agrees to transmit the Evaluation Material only to such of its Representatives who need to know the Evaluation Material for the sole purpose of assisting the undersigned in evaluating whether to pursue the Potential Transaction, who are informed of this Confidentiality Agreement and who, in writing, agree to be bound by the terms hereof as if a party hereto. Neither the undersigned nor its Representatives, without the prior written consent of the Sellers, shall disclose to any person the fact that it has received any of the Evaluation Material or that discussions or negotiations are taking place concerning the Potential Transaction, including, without limitation, the status thereof.

**Section 3.** No Cross-Talk. The undersigned agrees that, without the prior consent of the Sellers (either in a signed writing or by email), which the Sellers may withhold for any reason or no reason, the undersigned shall not, and shall cause its Representatives not to, enter into any discussions, negotiations, agreements or understandings with other prospective or actual buyers, investors or bidders, or institutional lenders or other financing sources, regarding the Potential Transaction or submit a joint proposal with any other prospective or actual buyers, investors or bidders, or institutional lenders or other financing sources, regarding the Potential Transaction.

**Section 4**. Communications Regarding a Potential Transaction. Unless otherwise agreed to by the Sellers in writing, all (i) communications regarding any Potential Transaction, (ii) requests for additional information, (iii) requests for facility tours or management meetings, and (iv) discussions or questions regarding procedures, will be submitted or directed to the Advisors.

**Section 5.** No Representations or Warranties. The undersigned understands and acknowledges that neither the Sellers nor the Advisors nor any of their respective affiliates or Representatives has made or makes, by virtue of this Confidentiality Agreement or otherwise, any representation or warranty, express or implied, in respect of the Evaluation Material, any other

information provided to the undersigned by the Sellers or the Advisors or the Potential Transaction. The undersigned agrees that neither the Sellers nor the Advisors nor any of their respective affiliates or Representatives shall have any liability to the undersigned or any other person (including, without limitation, any of its Representatives) resulting from the provision or use of the Evaluation Material by virtue of this Confidentiality Agreement or otherwise. The undersigned further acknowledges that the Sellers may be exploring the possibility of pursuing the Potential Transaction with parties other than the undersigned, and may be supplying the Evaluation Material and other materials to such parties, and that nothing in this Confidentiality Agreement prohibits the Sellers from doing any of the foregoing or from consummating a Potential Transaction with another party or not consummating a Potential Transaction with any party.

**Section 6.** Remedies. The undersigned acknowledges and agrees that any breach of this Confidentiality Agreement by the undersigned or any of its Representatives would cause immediate and irreparable harm to the Sellers, their affiliates and their respective Representatives, as applicable, and that monetary damages would be an insufficient remedy. Accordingly, it is agreed that, in addition to any other remedy to which the foregoing may be entitled at law or in equity, the Sellers, their affiliates and their respective representatives, as applicable, shall be entitled to such relief, including, without limitation, injunctions, restraints and such other relief as a court may grant (without the posting of any bond and without proof of actual damages) to prevent breaches or threatened breaches of, and/or to specifically enforce, this Confidentiality Agreement, and that neither the undersigned nor its Representatives shall oppose the granting of such relief. The Advisors and their representatives are third-party beneficiaries of this Confidentiality Agreement.

**Section 7.** Non-Solicitation.

(a) The undersigned agrees not to, and agrees to cause its Representatives not to, directly or indirectly, use any Evaluation Material to solicit, initiate or maintain contact with, or provide any services to, any customers of the Sellers or otherwise compete with the Sellers. The undersigned shall not, and shall cause its Representatives not to, initiate or maintain contact with any security-holder, director, officer, employee, partner, manager, member, agent, advisor, representative, customer, supplier, independent contractor, affiliate or lender of the Sellers with respect to, or relating or referring in any way to, the business or assets of the Sellers or a potential transaction with or concerning the Sellers.

(b) The undersigned agrees not to, and agrees to cause its affiliates not to, for two (2) years from the date hereof, directly or indirectly, solicit to employ or employ any employees of, or independent contractors or consultants to, the Sellers or otherwise interfere with the relationship between such persons and the Sellers, and neither the undersigned nor its affiliates nor its Representatives shall approach any such employee, independent contractor or consultant for such purpose or authorize or knowingly approve the taking of such actions by any other person.

**Section 8.** No Obligation; Choice of Law/Forum. The undersigned agrees that, unless and until a definitive agreement with respect to the Potential Transaction has been executed and delivered, none of the Sellers, their affiliates, their respective representatives, nor the undersigned or its Representatives shall be under any legal obligation of any kind whatsoever with respect to the Potential Transaction by virtue of this Confidentiality Agreement, except for the matters specifically agreed to herein. This Confidentiality Agreement shall terminate three (3) years from the date hereof. This Confidentiality Agreement shall be governed by the internal laws of the State of New York without regard to its choice of law or conflict of law principles. The state and federal courts located in the City, County and State of New York shall have exclusive jurisdiction with respect to any disputes arising out of, or related to, this Confidentiality Agreement, and the undersigned irrevocably consents to the personal jurisdiction of such courts for any such disputes. In the event of any dispute under this Confidentiality

Agreement, the prevailing party in such dispute shall be entitled to recover from the losing party all fees, expenses and costs (including without limitation, attorneys' fees and expenses) incurred by the prevailing party in connection with such dispute. This Confidentiality Agreement may be executed via facsimile signature.

By signing below, the undersigned acknowledges, consents and agrees to the terms and conditions of this Confidentiality Agreement.

Full Entity Name:________________________________

By:____________________________________________
Name:__________________________________________
Title:__________________________________________

Address:_______________________________________
_______________________________________
Telephone:_____________________________________
Facsimile:_____________________________________
E-mail:________________________________________

# **Exhibit 3**
## **Form of Sale Agreement**

***DEBTOR BID DRAFT***

# ASSET PURCHASE AGREEMENT

This ASSET PURCHASE AGREEMENT (this "Agreement") is made and entered into as of May [•], 2014, by and among [INSERT APPLICABLE CONNECTEDU SELLERS], (each, a "Seller" [and collectively, the "Sellers"]),[1] [each] a debtor and debtor in possession in the Bankruptcy Case (as defined below), on the one hand, and [PURCHASER], (the "Purchaser"), on the other hand. As used in this Agreement, "Party" or "Parties" means, individually or collectively, the Purchaser and each of the Sellers.

## RECITALS

**WHEREAS**, ConnectEdu, Inc., a Delaware corporation and its subsidiaries (collectively, the "CEDU Companies") are in the business of providing products and services to educators, students, parents, administrators, and employers to prepare and transition learners on their pathways from school to college to career, with a focus on enhanced and personalized learning, and also providing solutions that assist educators and employers engage with students through familiar mobile and social channels (the "Business");

**WHEREAS**, on April 28, 2014 (the "Petition Date"), each of the CEDU Companies filed a voluntary petition for relief commencing a case under chapter 11 of title 11 of the United States Code, sections 101 et. seq. (as amended from time to time, the "Bankruptcy Code"), which cases are being jointly administered and styled *In re ConnectEdu, Inc. et. al.*, Case No. 14-11238 (the "Bankruptcy Case") and pending before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court");

**WHEREAS**, the Sellers desire to sell and assign to the Purchaser all of the Purchased Assets (as defined below) and all of the Assumed Liabilities (as defined below), and the Purchaser desires to purchase from the Sellers all of the Purchased Assets and assume all of the Assumed Liabilities, upon the terms and conditions hereinafter set forth;

**WHEREAS**, the Parties intend to effectuate the transactions contemplated by this Agreement pursuant to sections 105, 363 and 365 of the Bankruptcy Code; and

**WHEREAS**, the execution and delivery of this Agreement and the Sellers' ability to consummate the transactions set forth in this Agreement are subject, among other things, to the entry of an order of the Bankruptcy Court in substantially the form and substance attached hereto as Exhibit A, pursuant to, *inter alia*, sections 105, 363 and 365 of the Bankruptcy Code (i) authorizing and approving, *inter alia*, the sale of the Purchased Assets to the Purchaser on the terms and conditions set forth herein and (ii) containing certain findings of facts, including, without limitation, a finding that the Purchaser is a good faith purchaser pursuant to section 363(m) of the Bankruptcy Code (the "Sale Order").

**NOW, THEREFORE**, in consideration of the premises and the mutual promises herein made, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

---

[1] Conform throughout for applicable number of Sellers.

1. Purchase and Sale of Assets, Assignment and Assumption.

(a) Subject in all respects to the Sale Order, the Sellers do hereby sell, transfer, assign, convey and deliver to the Purchaser all of the Sellers' right, title and interest in, to and under, AS IS, WHERE IS and WITHOUT ANY WARRANTY OR RECOURSE WHATSOEVER, the assets listed on Schedule 1 hereto (the "Assets") and the agreements and contracts listed on Schedule 2 hereto (the "Assumed Contracts" and together with the Assets, the "Purchased Assets"), effective as of the Effective Date and subject to the terms of this Agreement and the Sale Order.

(b) Subject in all respects to the Sale Order, the Purchaser does hereby purchase and assume (x) all liabilities and obligations of the Sellers in, to and under the Assumed Contracts and (y) all liabilities and obligations set forth on Schedule 3 hereto (collectively, the "Assumed Liabilities"), effective as of the Effective Date and subject to the terms of this Agreement and the Sale Order.

(c) Purchase Price. The purchase price to be paid by the Purchaser to the Sellers in exchange for the Purchased Assets is $[•] (the "Purchase Price"): (i) the Purchaser shall deliver an amount equal to $[], less the amount of the Good Faith Deposit (as defined below), less the amount of any interest or income accrued on the Good Faith Deposit as of the date thereof (the "Cash Balance") via wire transfer of immediately available funds to the account designated by the Sellers; and (ii) the Escrow Holder (as defined below) shall pay the Good Faith Deposit (and any interest or income accrued thereon) over to (a) the Sellers and upon such payment, such amount shall be credited and applied toward payment of the Purchase Price.

(b) The Purchaser has deposited into an escrow account at Bank of America and maintained by Lowenstein Sandler LLP, counsel to the Sellers, as escrow agent (the "Escrow Holder"), an amount equal to $[•] (the "Good Faith Deposit") in immediately available, good funds of the United States of America, [pursuant to the terms of that certain [ESCROW AGREEMENT].[2]

(d) "AS IS" Transaction; Release. The Purchaser hereby expressly acknowledges that the Sellers' right, title and interest in and to the Purchased Assets and the Assumed Liabilities are being conveyed to the Purchaser on an "as is" and "where is" basis with all faults, without recourse and without any oral or written warranties or representations, express or implied, and the Purchaser hereby agrees to accept such right, title and interest in and to the Purchased Assets on such basis. Without limiting the generality of the foregoing, the Purchaser and the Sellers hereby agree as follows:

(e) By acceptance of this Agreement, the Purchaser specifically acknowledges that the Purchaser is not relying on (and each Seller does hereby disclaim and renounce) any representations or warranties of any kind or nature whatsoever, whether oral or written, express, implied, statutory or otherwise, from the Sellers or any of their respective affiliates or representatives, including, without limitation, any covenant, representation or warranty regarding or relating to (a) the operation of the Purchased Assets or uses or merchantability or fitness of any

---

[2] Determine if applicable and revise or omit as needed.

portion of the Purchased Assets for a particular purpose; (b) whether or not any of the Purchased Assets will match the description thereof listed on Schedule 1; (c) the current location or accessibility of the Purchased Assets; and/or (d) the status, physical condition or safety of the Purchased Assets or the suitability of the Purchased Assets for a particular purpose. Each Seller hereby disclaims and, by its acceptance of this Agreement, the Purchaser hereby waives and releases, any implied or statutory warranties or guaranties of fitness, merchantability or any other statutory or implied warranty or guaranty of any kind or nature regarding or relating to the Purchased Assets.

(f) To the maximum extent permitted by applicable law, effective as of the date hereof, the Purchaser, on behalf of itself and its respective successors and assigns, and on behalf of its principals or affiliates and their respective successors and assigns (each, a "Releasor"), hereby (i) forever releases, acquits and discharges, to the fullest extent permitted by law, each of the CEDU Companies and their affiliates and each of their respective past, present and future principals or affiliates and their respective past, present or future officers, directors, employees, partners, members, managers, principals, and their successors and assigns (each, a "Releasee") of, from and against any and all actions, causes of action, losses, expenses, fees, charges, complaints, claims, demands, damages, obligations, promises, controversies, rights, taxes, lis pendens, liabilities, judgments, debts, dues, suits and proceedings of every kind, nature and description whatsoever, known or unknown, past, present or future, suspected or unsuspected, subject to dispute or not, including any claim as defined in section 101(5) of the Bankruptcy Code (collectively, "Claims"), arising from or relating to acts or omissions occurring on or before the date hereof, which such Releasor ever had, now has or may have, including without limitation any and all Claims arising from or relating to the Purchased Assets, the Assumed Liabilities, or the operation of the Business, including, without limitation, the condition, possession, ownership, use, operation, maintenance or repair of the Purchased Assets or any portion thereof and (ii) expressly disclaims any and all liability, and each Releasor forever waives any and all recourse of any kind or character against each Releasee in respect of any and all losses or damages, arising out of or relating to the Purchased Assets or the Assumed Liabilities arising from and after the Effective Date, including, without limitation, the condition, possession, ownership, use, operation, maintenance or repair of the Purchased Assets or any portion thereof.

2. Bankruptcy Court Approval; Effective Date. Notwithstanding anything to the contrary contained in this Agreement, the consummation of the sale of the Purchased Assets and the assumption of the Assumed Liabilities (together, the "Transaction") is subject to, and shall not occur until, the Sale Order shall have become a final order. After the Sale Order shall have become a final order, the Sellers shall give written notice to the Purchaser setting the closing date for the Transaction (the "Effective Date"), which shall be determined by the Sellers in their sole and absolute discretion; provided, however, that in no event shall the Effective Date occur prior to the second (2nd) business day following the date of delivery of such notice to the Purchaser or later than [●], 2014 (unless the parties mutually agree in writing to a later date). The Sellers' obligation to close the Transaction shall be conditioned upon, and subject to, the Purchaser's delivery of the Cash Balance in accordance with this Agreement. The Purchaser shall, at the Purchaser's own cost and expense, cooperate in good faith with the reasonable requests of the Sellers regarding the procurement of the Sale Order and with any proceedings in connection therewith or in furtherance thereof, including, without limitation, providing evidence as may be required by the Bankruptcy Court. Notwithstanding anything to the contrary contained in this

Agreement, the Parties agree and acknowledge that the Purchaser's obligations under this Agreement are irrevocable; provided, however, the Purchaser may terminate this Agreement if the Sale Order has not become a final order on or before [●], 2014, so long as the Purchaser is not in violation or breach of this Agreement and is otherwise ready, willing and able to close the Transaction.

3. Representations and Warranties. Each of the Parties represents and warrants to the other Party that: (a) it has the full limited liability company power and authority or corporate power and authority, as the case may be, to execute, deliver and perform its obligations under, and consummate the Transaction; (ii) the execution, delivery and performance of this Agreement by such Party, and the consummation of the Transaction, have been duly authorized and approved by all required limited liability company action or corporate action, as the case may be, on the part of such Party, including by such Party's board of managers or directors (or similar governing body) and does not require any authorization or consent of any shareholders, members or other equity holders of such Party that has not been obtained; and (iii) this Agreement is the legal, valid and binding obligation of such Party enforceable in accordance with its terms.

4. Sales and Other Taxes. Any and all sales or other taxes, if any, relating to the sale of Purchased Assets in connection therewith shall be the sole responsibility of the Purchaser.

5. Confidential Nature of Information. The Purchaser agrees that it will treat in confidence all documents, materials and other information that it shall have obtained regarding the Sellers and their affiliates during the course of the negotiations leading to the consummation of the Transaction (whether obtained before or after the date of this Agreement) and the preparation of this Agreement. Such documents, materials and information shall not be disclosed or communicated to any third person (other than to the Purchaser's counsel, accountants and financial advisors). The Purchaser shall not use any confidential information referred to in the second immediately preceding sentence in any manner whatsoever except solely for the enforcement of its rights hereunder; provided, however, that after the Effective Date, the Purchaser may use or disclose confidential information relating exclusively to the Purchased Assets in connection with the performance of its obligations thereunder. The obligation of Purchaser to treat such documents, materials and other information in confidence shall not apply to any information that (i) is or becomes available to the public other than as a result of disclosure by the Purchaser or its agents, or (ii) is required to be disclosed under applicable law or judicial process, including the Bankruptcy Case, but only to the extent it must be disclosed.

6. Non-Contact. Until the Effective Date, except with the prior written consent of the Sellers, the Purchaser shall not, and shall cause its affiliates and their respective representatives (including, without limitation, counsel, accountants and financial advisors) not to, initiate or maintain contact with any security-holder, director, officer, employee, employee union, partner, manager, member, agent, advisor, representative, customer, supplier, vendor, independent contractor, affiliate, lender or landlord of the Sellers or any of its affiliates with respect to, or relating or referring in any way to the Business. The provisions of this Section 8 shall expressly survive the termination of this Agreement.

7. Governing Law.

(a) This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York applicable to contracts executed in and to be performed in that State.

(b) All actions and proceedings arising out of or relating to this Agreement, including the resolution of any and all disputes hereunder, shall be heard and determined in the Bankruptcy Court, and the Parties hereby irrevocably submit to the exclusive jurisdiction of the Bankruptcy Court in any such action or proceeding and irrevocably waive the defense of an inconvenient forum to the maintenance of any such action or proceeding. The Parties hereby consent to service of process by mail (in accordance with Section 15) or any other manner permitted by law.

(c) THE PARTIES HEREBY IRREVOCABLY WAIVE ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED IN CONTRACT, TORT OR OTHERWISE) ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE ACTIONS OF THE SELLERS, THE PURCHASER, OR THEIR RESPECTIVE REPRESENTATIVES IN THE NEGOTIATION OR PERFORMANCE HEREOF.

8. Binding Effect; Successors and Assigns. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective permitted successors and assigns, including, in the case of the Sellers, any Bankruptcy Successor (as defined below); provided, however, this Agreement may not assigned by the Purchaser without the prior written consent of the Sellers. As used herein, the term "Bankruptcy Successor" shall mean, in addition to any successor by law, such as through merger, any trustee appointed in the Bankruptcy Case, including without limitation any chapter 11 or chapter 7 trustee, any debtor entity in the Bankruptcy Case, and any trustee, plan agent, liquidating agent, liquidating trust, creditor trust, creditor's committee, or similar entity appointed in the Bankruptcy Case, whether appointed by the Bankruptcy Court or pursuant to a chapter 11 plan confirmed in the Bankruptcy Case, to administer assets of the Sellers' and/or their debtor affiliates' estates for the benefit of the holders of claims against the Sellers and/or their debtor affiliates.

9. Entire Agreement; Amendment. This Agreement, including the exhibits attached hereto, together with that certain [●][2], dated [•], by and between the Purchaser and ConnectEdu, Inc. (the provisions of which shall expressly survive the termination of this Agreement, or the consummation of the sale of the Purchased Assets as contemplated by this Agreement, in accordance with its terms), sets forth all the promises, covenants, agreements, conditions, and understandings between the Parties, and supersedes all prior and contemporaneous agreements, understandings, inducements, or conditions, expressed or implied, oral, written or electronic, except as herein contained. The Parties hereby irrevocably agree that no attempted amendment, modification, termination, discharge, or change of this Agreement shall be valid and effective, unless each of the Parties shall mutually agree in writing thereto.

[2] Insert reference to Purchaser's confidentiality letter with the Debtors.

10. Waivers. Any term or provision of this Agreement may be waived, or the time for its performance may be extended, by the Party or Parties entitled to the benefit thereof. Any such waiver shall be validly and sufficiently authorized for the purposes of this Agreement if, as to any Party, it is authorized in writing by an authorized representative of such Party. Except as otherwise provided herein, the failure of any Party hereto to enforce at any time any provision of this Agreement shall not be construed to be a waiver of such provision, nor in any way to affect the validity of this Agreement or any part hereof or the right of any Party thereafter to enforce each and every such provision. No waiver of any breach of this Agreement shall be held to constitute a waiver of any other or subsequent breach. No failure on the part of any Party to exercise, and no delay in exercising, any right, power or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of such right, power or remedy by such Party preclude any other or further exercise thereof or the exercise of any right, power or remedy. All remedies hereunder are cumulative and are not exclusive of any other remedies provided by law.

11. Expenses. Each Party will pay all costs and expenses incident to its negotiation and preparation of this Agreement and to its performance and compliance with all agreements and conditions contained herein on its part to be performed or complied with, including the fees, expenses and disbursements of its counsel and accountants.

12. Partial Invalidity. Wherever possible, each provision hereof shall be interpreted in such manner as to be effective and valid under applicable law, but in case any one or more of the provisions contained herein shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, such provision shall be ineffective to the extent, but only to the extent, of such invalidity, illegality or unenforceability without invalidating the remainder of such invalid, illegal or unenforceable provision or provisions or any other provisions hereof, unless such a construction would be unreasonable.

13. Execution in Counterparts. This Agreement may be executed in counterparts, each of which shall be considered an original instrument, but all of which shall be considered one and the same agreement, and shall become binding when one or more counterparts have been signed by and delivered to each of the Parties hereto. Delivery of an executed counterpart of a signature page to this Agreement by facsimile or electronic delivery (i.e., by electronic mail of a PDF signature page) shall be effective as delivery of a manually executed counterpart of this Agreement.

14. Construction. In the interpretation and construction of this Agreement, the Parties acknowledge that the terms hereof reflect extensive negotiations between the Parties and this Agreement shall not be deemed, for the purpose of construction and interpretation, drafted by either Party.

15. Notices.

(a) All notices or other communications required or permitted hereunder shall be in writing and shall be given or delivered by personal delivery, by facsimile, by electronic mail or by a nationally recognized private overnight courier service addressed as follows:

If to the Purchaser, to:

___________________________
___________________________
___________________________
Attn:
Facsimile:
E-mail:

with a copy to (which alone shall not constitute notice):

___________________________
___________________________
___________________________
Attn:
Facsimile:
E-mail:

If to a Seller, to:

c/o ConnectEdu, Inc.
___________________________
___________________________
___________________________
Attn:
Facsimile:
E-mail:

with a copy to (which alone shall not constitute notice):

Lowenstein Sandler LLP
1251 Avenue of Americas
New York, NY 10020
Attn: Sharon L. Levine, Esq. and Steven E. Siesser, Esq.
Facsimile: (973) 597-2400
E-mail: slevine@lowenstein.com and ssiesser@lowenstein.com

or to such other address or facsimile number as such Party may indicate by a notice delivered to the other Party hereto.

(b) Any notice, consent, authorization, direction or other communication delivered as aforesaid shall be deemed to have been effectively delivered and received, if sent by a nationally recognized private overnight courier service, on the date following the date upon which it is delivered for overnight delivery to such courier service, if delivered personally (with written confirmation of receipt), on the date of such delivery or, if sent via facsimile or electronic mail, on the date of the transmission of the facsimile or electronic mail, provided that the sender thereof receives written confirmation that the facsimile or electronic mail, as the case may be, was successfully delivered to the intended recipient.

16. No Third Party Beneficiaries. This Agreement is for the sole benefit of the Parties and their permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other Person any legal or equitable benefit, claim, cause of action, remedy or right of any kind.

**[SIGNATURE PAGES FOLLOW]**

**IN WITNESS WHEREOF**, the parties hereto have caused this Asset Purchase Agreement to be executed the day and year first above written.

**PURCHASER:**

**[•]**

By: ______________________________
Name:
Title:

**SELLER[S]:**

**[•]**

By: ______________________________
Name:
Title:

**[•]**

By: ______________________________
Name:
Title:

# SCHEDULE 1

## PURCHASED ASSETS

# SCHEDULE 2

## ASSUMED CONTRACTS

**SCHEDULE 3**

**ASSUMED LIABILITIES**

**EXHIBIT A**

**SALE ORDER**

**Exhibit 4**

**Sale Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>ConnectEdu, Inc., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 14-11238 (SCC)<br><br>(Jointly Administered) |

**NOTICE OF SALE OF CERTAIN ASSETS AT AUCTION**

**PLEASE TAKE NOTICE** that pursuant to the *Order Approving (A) Bidding Procedures, (B) Form and Manner of Sale Notices, and (C) Sale Hearing Date* (the "Bidding Procedures Order") entered by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), the above-captioned debtors and debtors in possession (collectively, the "Debtors") are offering for sale substantially all of their assets (the "Purchased Assets").[2] Capitalized terms used but not otherwise defined in this notice (the "Sale Notice") shall have the meanings ascribed to them in the Bidding Procedures Order.

**PLEASE TAKE FURTHER NOTICE** that all interested parties are invited to make offers to purchase the Purchased Assets in accordance with the terms and conditions approved by the Bankruptcy Court (the "Bidding Procedures"). Pursuant to the Bidding Procedures, the Debtors may conduct an auction for the Purchased Assets (the "Auction") beginning at **9:30 a.m. (prevailing Eastern time) on May 27, 2014** at the offices of Lowenstein Sandler LLP, 1251 Avenue of the Americas, New York, New York, subject to adjournment pursuant to the Bidding Procedures.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: (1) ConnectEdu, Inc. (8132) ("ConnectEdu") and its direct subsidiaries: (2) Experience, Inc. (0757) ("Experience"); and (3) Academic Management Systems, Inc. (0844) ("AMS"). The location of the Debtors' corporate headquarters is 600 Atlantic Avenue, 20th Floor, Boston, MA 02210.

[2] The Debtors are engaged in negotiations to sell, by separate order, the issued and outstanding capital stock of Debtor AMS and certain assets of Connect held or used in connection with the conduct of AMS' business (the "AMS Assets") to North Atlantic. To the extent the Debtors enter into and close on the sale of the AMS Assets to North Atlantic, such assets shall not be subject to a sale under this Notice.

**PLEASE TAKE FURTHER NOTICE** that participation at the Auction is subject to the Bidding Procedures and the Bidding Procedures Order, copies of which are provided herewith.

**PLEASE TAKE FURTHER NOTICE** that notwithstanding Bankruptcy Court approval of a sale pursuant to the terms of one or more Successful Bids, the Good Faith Deposits of all Successful Bidders and Alternate Bidders will be held in an interest-bearing escrow account by counsel for the Debtors and all such Bids shall remain open and not returned until two business days following the closing (the "Deposit Return Date") of the Sale to the buyer (the "Buyer"); provided, however, that if the Debtors determine not to sell the Purchased Assets, the Good Faith Deposits of all Qualified Bidders will be returned within 48 hours of the Auction. The Good Faith Deposits of all other Qualified Bidders will be returned within 48 hours of the Auction. Upon failure to consummate the Sale of the Purchased Assets because of a breach or failure on the part of the Buyer, the Debtors may proceed with a Sale to the Alternate Bidders without further order of the Bankruptcy Court. The Good Faith Deposit(s) submitted by the Buyer, together with interest thereon, shall be applied against the payment of the cash portion of the purchase price upon closing of the Sale to the Buyer. In the event a Bidder fails to close through its own default, its Good Faith Deposit shall be released to the Debtors. On the Deposit Return Date, the Debtors will return the Good Faith Deposits of all other Successful Bidders and Alternative Bidders with accrued interest.

**PLEASE TAKE FURTHER NOTICE** that the Debtors may: (a) determine, in their business judgment, which Qualified Bid is the highest or otherwise best offer and (b) reject at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid any Bid which, in their discretion, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of sale, or (iii) contrary to the best interests of the Debtors, their estates, and their creditors.

**PLEASE TAKE FURTHER NOTICE** that a hearing to approve the Sale of the Purchased Assets to the highest or otherwise best Qualified Bid is scheduled to be held on **May**

**29, 2014 at 2:00 p.m. (prevailing Eastern time)**, before the Honorable Shelley C. Chapman, U.S.B.J., United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, NY 10004. The hearing on the Sale may be adjourned without notice other than an adjournment in open court.

**PLEASE TAKE FURTHER NOTICE** that this Sale Notice is qualified in its entirety by the Bidding Procedures Order.

Dated: May __, 2014

**LOWENSTEIN SANDLER LLP**

/s/ ______________________________

Sharon L. Levine, Esq.
Wojciech F. Jung, Esq.
Nicole Stefanelli, Esq.
Jillian L. Zadie, Esq.
1251 Avenue of the Americas, 17th Floor
New York, New York 10020
(212) 262-6700 (Telephone)
(212) 262-7402 (Facsimile)

-and-

65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

*Proposed Counsel to the Debtors and Debtors-in-Possession*

**Exhibit 5**
**Assumption Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| ConnectEdu, Inc., *et al.*,[1] | Case No. 14-11238 (SCC) |
| | (Jointly Administered) |
| Debtors. | |

**NOTICE OF ASSUMPTION AND ASSIGNMENT**
**OF EXECUTORY CONTRACT OR UNEXPIRED LEASE**

**PLEASE TAKE NOTICE** that pursuant to the *Order Approving (A) Bidding Procedures, (B) Form and Manner of Sale Notices, and (C) Sale Hearing Date* (the "Bidding Procedures Order") entered by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), the above-captioned debtors and debtors in possession (collectively, the "Debtors") are offering for sale substantially all of their assets (the "Purchased Assets").[2] Capitalized terms used but not otherwise defined in this notice (the "Sale Notice") shall have the meanings ascribed to them in the Bidding Procedures Order.

**PLEASE TAKE FURTHER NOTICE** that the Sellers are a party to various executory contracts and unexpired leases (collectively, the "Contracts"). In connection with the Sale of the Purchased Assets, the Sellers **may** seek to assume and assign certain Contracts to the Successful Bidder (collectively, the "Assumed Contracts") at the hearing to be held on **May 29, 2014 at 2:00 p.m. (prevailing Eastern time)** (the "Sale Hearing"), before the Honorable Shelley

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: (1) ConnectEdu, Inc. (8132) ("ConnectEdu") and its direct subsidiaries: (2) Experience, Inc. (0757) ("Experience"); and (3) Academic Management Systems, Inc. (0844) ("AMS"). The location of the Debtors' corporate headquarters is 600 Atlantic Avenue, 20th Floor, Boston, MA 02210.

[2] The Debtors are engaged in negotiations to sell, by separate order, the issued and outstanding capital stock of Debtor AMS and certain assets of Connect held or used in connection with the conduct of AMS' business (the "AMS Assets") to North Atlantic. To the extent the Debtors enter into and close on the sale of the AMS Assets to North Atlantic, such assets shall not be subject to a sale under this Notice.

C. Chapman, U.S.B.J., United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, NY 10004.

**PLEASE TAKE FURTHER NOTICE** that you have been identified as a party to a Contract that the Sellers **may** seek to assume and assign. The Assumed Contract(s) with respect to which you have been identified as a non-Debtor party, and the corresponding proposed cure amount (the "Cure Amount") are set forth on Exhibit 1 annexed hereto.

**PLEASE TAKE FURTHER NOTICE** that the Sellers believe that any and all defaults (other than the filing of these Chapter 11 Cases) and actual pecuniary losses under the Assumed Contracts can be cured by the payment of the Cure Amounts.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the proposed assumption and assignment of an contract or unexpired lease, including, but not limited to, objections relating to the Cure Amount (each, an "Assumption Objection"), must be filed on or before **May 27, 2014 at 9:30 a.m. (prevailing Eastern time)** (the "Assumption Objection Deadline") and served, so as to be actually received by the Assumption Objection Deadline, upon: (i) the Debtors' Chief Restructuring Officer, Mark D. Podgainy, Getzler Henrich & Associates LLC, 295 Madison Avenue, 20th Floor, New York, NY 10017, mpodgainy@getzlerhenrich.com; (ii) counsel to the Debtors, Lowenstein Sandler LLP, 65 Livingston Avenue, Roseland, New Jersey 07068, Attention: Sharon L. Levine, Esq. slevine@lowenstein.com, Wojciech F. Jung, Esq. wjung@lowenstein.com and Nicole Stefanelli, Esq. nstefanelli@lowenstein.com; (iii) counsel to any statutory committee; (iv) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Room 1006, New York, NY 10014, Attn: Susan Golden, Esq., and (v) counsel to North Atlantic, Richard C. Pedone, Esq. rpedone@nixonpeabody.com. Any Assumption Objection relating to the Cure Amount must state with specificity what cure is required (with appropriate documentation in support thereof). Notwithstanding the Assumption Objection Deadline, counterparties to contracts and leases subject to assumption and assignment may file and serve their objections related solely to the issue of adequate assurance of future performance

(the "Adequate Assurance Objection") no later than **thirty minutes prior to the Sale Hearing**. If an Assumption Objection or an Adequate Assurance Objection is timely filed, a hearing with respect to the Assumption and/or Adequate Assurance Objection will be held at the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE** that at the conclusion of the Auction (if any), but in no event later than **May 29, 2014 at 11:00 a.m. (prevailing Eastern time)**, the Debtors will file with the Bankruptcy Court a Notice of Successful Bidder (the "Successful Bidder Notice") setting forth (a) the identity of the Successful Bidder, (b) the identity of the Alternate Bidder (if any), and (c) the list of Assumed Contracts that will be assumed and assigned to the Successful Bidder. The filing of the Successful Bidder Notice shall constitute a request by the Debtors for approval at the Sale Hearing of the assumption by the Debtors of the Assumed Contracts and assignment thereof to the Successful Bidder.

**PLEASE TAKE FURTHER NOTICE** that If an Assumption Objection or Adequate Assurance Objection, as applicable, is not received by the Assumption Objection Deadline and the deadline for the filing of Adequate Assurance Objection state above, the Assumed Contract shall be deemed assumed effective as of the date of the closing of the Sale, the Cure Amount set forth in the Assumption Notice shall be controlling, notwithstanding anything to the contrary in any Contract or any other document, and the non-debtor counterparty to the Assumed Contract shall be forever barred from asserting any other claims against the Debtors or the Successful Bidder (as appropriate), or the property of either of them, as to such Assumed Contract.

**PLEASE TAKE FURTHER NOTICE** that except as may otherwise be agreed to by the parties to a Contract that is assumed and assigned to the Successful Bidder (with the consent of the Successful Bidder), upon the closing of the Sale, the Successful Bidder shall pay all Cure Amounts in cash. In the event of a dispute regarding the Cure Amount, any payments required, following entry of a final order resolving such dispute, shall be made as soon as practicable thereafter.

**PLEASE TAKE FURTHER NOTICE** that the Sellers reserve the right to remove any Assumed Contract from any proposed Sale and to withdraw the request to assume and assign any such Assumed Contract.

Dated: May __, 2014

**LOWENSTEIN SANDLER LLP**

/s/________________________________________

Sharon L. Levine, Esq.
Wojciech F. Jung, Esq.
Nicole Stefanelli, Esq.
Jillian L. Zadie, Esq.
1251 Avenue of the Americas, 17th Floor
New York, New York 10020
(212) 262-6700 (Telephone)
(212) 262-7402 (Facsimile)

-and-

65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

*Proposed Counsel to the Debtors and Debtors-in-Possession*